## GEORGE WRINN vs. THOMAS JONES.

The plaintiff, driving a light wagon over a bridge, on the right of the road, met the defend-
ant's heavy team on the same side, drove between the defendant's team and the side of
the bridge, and came into collision with the defendant's team. In an action to recover
for injuries caused by the collision, the defendant asked the judge to instruct the jury
that if the plaintiff saw that the space through which he tried to pass was narrow, and
there was ample room on the other side, it was his duty to pass on the other side; that if
he insisted in passing on the narrow side he was negligent; and that one driving a light
team is bound to get out of the way of one driving a heavy team. The judge did not
give the instructions in the words prayed for; but instructed the jury that the plaintiff
must prove that the collision was caused solely by the negligence of the defendant; that
whether it was the plaintiff's duty to have turned to the left was for the jury; that if he
was negligent in not so doing he could not recover; and that if the defendant was driv-
ing a heavy team and the plaintiff a light one, these were circumstances for the jury to
consider as modifying their respective duties. *Held*, that the defendant had no ground
of exception.

TORT for injuries alleged to have been caused to the plain-
tiff by the defendant, through his servant, negligently driving
against the plaintiff's team.

The plaintiff testified "that he was coming from Chelsea
to Charlestown over Chelsea Bridge, between ten and eleven
o'clock in the morning, and was driving his horse harnessed to a
light express wagon at an ordinary trot, on the right hand side
of the bridge coming to Charlestown, when the defendant's team
and the plaintiff's collided, the plaintiff's left forward wheel and
the defendant's left hind wheel striking each other; that the de-
fendant was driving his team more on the defendant's left of the
centre of the bridge than on his right, and at a walk, and as the
plaintiff approached him, did not turn either way; that the plain-
tiff veered to the right and checked his horse at a respective dis-
tance from the defendant's team, and as he drove by the de-
fendant, the collision took place; and that the defendant drove
on twenty or thirty feet and stopped." On cross-examination
the plaintiff testified "that he was driving his horse five or six
miles an hour; that he noticed the defendant's team about one
third of a mile distant; that he did not make any effort to
check his horse's speed till within twenty-five or thirty feet of
the defendant's team · that he did not make any outcry to the

defendant's servant who was driving till after the collision; that he noticed, as he approached the defendant's team, that the space between the railing of the bridge and the defendant's wagon on the left of the defendant was rather narrow; that he supposed the defendant would rein a little to the right; that there was ample space for him to have passed safely on the other side of the defendant, if he had chosen so to do; but that he intended to drive on his right hand side of the bridge though he saw the space for him to pass through was narrow;" that his horse was young; that his wagon was without any load at the time, except fifteen or twenty empty potato bags; and that he noticed that the defendant's team was a heavy one and heavily loaded.

The defendant testified that his team was a heavy one, and, with the load, would weigh at the time of the collision three tons and more; and that upon the day on which the collision took place, the travelling over the bridge was hard and slippery.

John Mahan, the defendant's servant who was driving his team at the time of the collision, testified, that he had just turned out of the railroad track on the bridge to avoid a horse-car, and at the time of the collision was a little more to his left than to his right of the centre of the bridge; that there was sufficient room for teams to pass on either side of him at the time; that he did not notice the plaintiff until he was within thirty or thirty-five feet of him; that the plaintiff was driving eight or nine miles an hour at the time of the collision, and so continued to drive till the wheels struck each other; that if the plaintiff had been driving at a proper speed the plaintiff could have passed him in safety on either side; and that other teams passed him on the same side as the plaintiff; that he did not change his course to avoid those other teams; and that the defendant's team, at the time of the collision, was walking.

It appeared that the bridge was thirty feet wide at the place of the collision; that the space occupied by the horse-car track was five feet and one inch; that teams or carriages can drive over that part of the bridge used by the horse-cars; and that the width of the defendant's wagon from the outside of one hub to the outside of the other was six feet nine inches.

The defendant requested the judge to instruct the jury as follows: "If the jury find that the defendant was on the wrong side of the road or bridge, and the plaintiff saw that the space through which he was to pass on the right of the defendant's team was narrow, and there was sufficient space for the plaintiff to pass on the left of the defendant's team, it was the plaintiff's duty to pass seasonably to the left of the defendant. It was negligence for the plaintiff to drive at such a speed as would make it impossible to check his horse in time to avoid obstacles which he might have reasonably anticipated on the road or bridge, or to turn aside upon meeting or passing other travellers who were themselves acting prudently. The party driving a light team is bound to give way, or get out of the way of the party who is driving a heavily loaded team, and the testimony finds that the plaintiff was driving a light team, and the defendant was driving a heavily loaded team. If the jury find that the defendant was on the wrong side of the bridge, and there was ample room for the plaintiff to have passed on the other side (left side) of the defendant, and the plaintiff insisted on passing on the right side of the defendant, and it was narrow, the plaintiff, taking such a risk, was negligent on his part, and immediately contributed to the accident and injury, and cannot recover."

The judge did not give the instructions prayed for, in the language proposed; but among other things instructed the jury as follows: "In order to maintain his action, the plaintiff must prove that the collision was caused solely by the negligence of the defendant; if any negligence on his part contributed to the result, the plaintiff cannot recover. Whether it was the duty of the plaintiff, under the circumstances in which the parties were placed, to have turned to the left, or refrained from attempting to pass on the right, whether he was driving at unreasonable speed, or did not seasonably check his speed, are questions for the jury to determine, and if the plaintiff was guilty of any negligence in any of these respects, which contributed to the accident, he cannot recover. The mere fact that the defendant was on the left side of the bridge was not evidence of negligence. He had a right to travel on all parts of the bridge, the only obligation im-

posed upon travellers being seasonably to turn to the right upon meeting. If the defendant was driving a heavily loaded wagon, and the plaintiff was driving a light team, these were circumstances for the jury to consider as modifying their respective duties."

The jury returned a verdict for the plaintiff, and the defendant alleged exceptions.

*J. W. Pettengill*, for the defendant.

*J. L. Eldridge*, for the plaintiff.

BY THE COURT. The whole question of fact was rightly submitted to the jury under instructions sufficiently favorable to the defendant, and which were all that the facts of the case required.

*Exceptions overruled.*