PATRICK DRISCOLL *vs.* WEST END STREET RAILWAY COMPANY.

Suffolk.    January 17, 1893. — May 19, 1893.

Present: FIELD, C. J., ALLEN, KNOWLTON, & BARKER, JJ.

*Personal Injuries — Street Railway — Due Care — Negligence.*

A. Street, in a certain city, upon which there were electric railway tracks, had a descending grade. B. Street entered A. Street on one side, and C. Street entered it on the opposite side about fifty feet south of B. Street. A teamster, who was driving two horses attached to a heavy wagon containing coal, came along B. Street and turned into A. Street, looked up that street, and saw an electric car coming down A. Street about four hundred feet from him, at the rate of six or seven miles an hour. He started to cross the tracks diagonally in order to reach C. Street, and, seeing the car close to him, hurried up his horses, but the car collided with his wagon after the horses were across the tracks, and he was injured. The motorman of the car did not sound the gong or halloo to him, and did not apply the brakes until the car was about twenty feet from him. *Held*, in an action for the injury, that the questions whether the plaintiff used due care and the defendant was negligent were for the jury.

TORT, for personal injuries occasioned to the plaintiff by the collision of a train of two electric cars, belonging to the defend-

ant with a team driven by the plaintiff. Trial in the Superior Court before *Hopkins*, J., who allowed a bill of exceptions, in substance as follows.

On December 11, 1890, the plaintiff was in the employ of Wellington and Company as a teamster, and had been employed as a teamster in and about Boston for twenty-three years. On that day he was driving a two-horse team, the horses being driven abreast in a four-wheeled wagon weighing without a load thirty-eight hundred and fifty pounds. At the time of the collision the wagon was loaded with coal to the amount of three and a quarter tons. The plaintiff was on the seat of the wagon, holding the reins, and, after coming through Portland Street in an easterly direction, drove into Hanover Street, and was crossing Hanover Street diagonally in order to reach Elm Street, which runs easterly from the side of Hanover Street opposite Portland Street, and about fifty feet south from Portland Street. The cars were going down Hanover Street in a northerly direction. The collision took place nearly opposite Elm Street. The distance from the nearest point on Court Street to the nearest point on Elm Street, measuring on Hanover Street, is four hundred and forty feet. The distance along Hanover Street between the nearest points on Portland Street and Elm Street is fifty feet, and the width of Hanover Street in the vicinity of Elm Street is sixty-one feet between the buildings. From Court Street to Elm Street the grade of Hanover Street is a gradually descending one, being eighteen and one half feet more at Elm Street than at Court Street.

The plaintiff testified that, when he reached Hanover Street, as soon as he could see, he looked up and down the street and saw the cars which struck him coming towards him on that street, and at that time about fifty feet from Court Street; that he continued along, and, when he found that the car was approaching too close to him, he " stirred up " his horses to get over the track; that he could not tell how fast the cars were coming, but judged at the rate of six or seven miles per hour; that there were two car tracks running through Hanover Street; that he crossed the one on the side nearest Portland Street, and had reached a point where his horses were just over the other track toward Elm Street, with his front wheel on the farther

rail of this track, when the car struck the forward wheel of his team, breaking the axle and throwing him to the ground; that the tracks were fine and clear; that the car was so far away from him that he did not want to stop; that the driver did not halloo to him; that he did not hear any gong; and that there was another team behind him.

On cross-examination, he testified that his horses had not got any farther than the flagging at the end of Portland Street when he first looked and saw the cars coming down the hill; that he looked as soon as he could see around the corner of the building; that his horses were walking "pretty slow"; that he had a good load for two horses; that he noticed the cars coming, and knew that they were approaching him; that if he had gone straight across the tracks he did not know that the cars would have hit him, or, if he had turned to the right and waited, he did not know that he would have been hit, but that he did not intend to wait; that he thought the car was going six miles per hour a little while before it struck him, and that was the fastest that it was going at any time; and that he had driven over this route many times previously, and knew that electric cars ran on Hanover Street.

Samuel Hosey, Jr. testified that he was sitting in the forward car, and, by the sudden putting on of the brakes, he was lurched forward and thrown on the floor, and before he recovered himself the car struck something; that he could not tell what had been done with the brakes previously to that time; that the car "was not going so very fast,—it was not what I should call a great rate of speed, at the same time it was going pretty fast"; that the tracks were slippery and moist as if the frost was coming out (it was a thawy day), and the cars seemed to slip, the hind car pushing the forward car; that the brakes brought the car up very quickly; that five or ten seconds intervened between the time when the brakes were put on and the collision; and that he could not tell how far the car went after the brakes were put on before the collision.

Thomas Riley testified that he was driving a string team, and was going from Elm Street into Hanover Street; that he saw the plaintiff coming on a slant across Hanover Street towards Elm Street; that he saw the car about one hundred feet or

more from the plaintiff, and at that time the plaintiff's horses were just coming on to the farther track from him ; that he saw the plaintiff hastening his horses as much as he could to get across ; and that when about twenty feet from the plaintiff the motorman on the car jumped for the brake.   On cross-examination, the witness testified that, when the plaintiff's horses were between the two tracks, the car was about twenty feet away ; that he heard no gong and heard no one halloo ; that his three horses were hitched tandem, and, when he first saw the car, the forward horse was just turning the corner of Elm Street and Hanover Street; that he could just see around the corner; that at that time the car was about seventy-five feet from him ; that at that time the plaintiff's horses had not got their forward feet on to the farther track from him ; that the plaintiff did not pull up his horses, but hastened them forward ; that if he had stopped where he was, there would have been no collision ; and that he himself stopped his team.

No other evidence was introduced by the plaintiff:   Upon this evidence, the judge ruled that the action could not be maintained ; and ordered a verdict for the defendant.   The plaintiff alleged exceptions.

*J. H. Ponce,* for the plaintiff.

*M. F. Dickinson, Jr. & W. B. Sprout,* for the defendant.

FIELD, C. J.   Street railway companies are not subject to the provisions of Pub. Sts. c. 93.   By Pub. Sts. c. 113, § 37, whoever maliciously delays or obstructs the passing of the cars on the tracks of such a company is to be punished ; and by § 38 the company is to be punished if it wilfully or negligently obstructs the passing of carriages over a street or highway. Street railway companies, under the decision of *Commonwealth* v. *Temple,* 14 Gray, 69, in running their cars, have certain rights in the streets different from those which belong to the drivers of ordinary vehicles, but none of these rights is directly involved in the case at bar, although it may perhaps be a fact to be considered that the plaintiff's wagon could proceed in any direction along the streets, while the defendant's car must proceed, if at all, on the line of its tracks.   The drivers and conductors of street railway cars, whatever the motive power, have in general the same rights and duties with reference to other

vehicles crossing their course that the drivers of omnibuses have, for example, or that the driver of any other vehicle has. *O'Neil* v. *Dry Dock, East Broadway, & Battery Railroad,* 129 N. Y. 125. In *Commonwealth* v. *Temple,* 14 Gray, 69, 75, it is said : " Where the entire public, each according to his own exigencies, has a right to the use of the highway, in the absence of any special regulation by law, the right of each is equal. . . . Each may use it to his own best advantage, but with a just regard to the like right of others. Persons in light carriages, for the conveyance of persons only, have occasion, and of course a right, when not expressly limited by law, to travel at a high rate of speed, so that they do not endanger others. But all foot passengers, including aged persons, women, and children, have an equal right to cross the streets ; and all drivers of teams and carriages are bound to respect their rights, and regulate their own speed and movements in such a manner as not to violate the rights of such passengers. So in regard to the drivers of fast and slow carriages, each must respect the rights of the other." In *Garrigan* v. *Berry,* 12 Allen, 84, it is said : " There being no statute regulating the manner in which persons should drive when they meet at the junction of two streets, the rule of the common law applies, and each person is to use due and reasonable care, adapted to the circumstances and place." See *Norris* v. *Saxton,* 158 Mass. 46. The plaintiff cannot recover if he was guilty of negligence which contributed to the collision, although the defendant's servants were negligent. Each party is bound to exercise due care. *Parker* v. *Adams,* 12 Met. 415. What each ought to do when a collision may reasonably be anticipated as possible or probable, if each continues to go on as he is going, is usually a practical question eminently fit for a jury to determine. *Schienfeldt* v. *Norris,* 115 Mass. 17. *Wrinn* v. *Jones,* 111 Mass. 360.

In the present case, we think the questions of due care on the part both of the plaintiff and of the defendant's servants were for the jury. One circumstance to be considered is, that the plaintiff's horses were across the defendant's track at the time his wagon was hit. When two vehicles are proceeding at reasonable rates of speed on converging lines, and the question arises as to which should give way, one circumstance to be considered is, which, according to the rates of speed they are going,

will first reach the point where the lines of travel cross each other. The plaintiff's testimony is that the car was nearly four hundred feet from him when he proceeded to cross Hanover Street diagonally to Elm Street. It seems to have been daylight, and although it does not appear when the driver of the car first saw the plaintiff, no reason appears why he should not have seen him long before he applied the brakes. The evidence was that he put on the brakes five or ten seconds before the collision, or when the front of the car was about twenty feet from the plaintiff. It was the duty of the driver of the car to keep a reasonable lookout for teams coming from cross streets, and reasonable control of his car, so as to avoid collisions, and we think that there was evidence for the jury that this was not done. Neither can we say that there was not evidence for the jury that the plaintiff was in the exercise of due care. Apparently, if the speed of the car had been seasonably checked, the collision would have been avoided, and the danger was not immediate when the plaintiff undertook to cross the tracks. See *Kerrigan* v. *West End Street Railway*, 158 Mass. 305.

*Exceptions sustained.*