BRINTON P. ROBBINS *vs.* SPRINGFIELD STREET RAILWAY COMPANY.

Hampden.    September 25, 1895. — November 30, 1895.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Street Railway — Due Care — Negligence — Law and Fact — Evidence — Trial.*

In an action against a street railway corporation for personal injuries occasioned to the plaintiff, who was seventy-nine years old, blind in one eye, and partially deaf in one ear, by a collision with an electric car while driving a horse attached to a wagon diagonally over the railway track in crossing from one side of the street to the other, he testified that he did not see the car, although he looked both ways before he entered upon the track, and that he did not hear the gong on the car sounded; and he introduced evidence tending to show that the car was running at a high rate of speed. The defendant's evidence tended to show that the car was only ten or twelve feet away when the plaintiff drove upon the track; that the gong was sounded repeatedly before the collision; that the plaintiff did not seem to heed the ringing of the gong; and that the car was running at the ordinary rate of speed, which was from four to six miles an hour. *Held*, that the questions of the plaintiff's due care and of the defendant's negligence were for the jury.

A man nearly eighty years old, blind in one eye and partially deaf, has a right to drive unattended a horse attached to a wagon upon a street in a city on which an electric railway runs, and to enter upon the railway in attempting to cross from one side of the street to the other, but in so doing he must use a degree of care and caution commensurate with the circumstances of the case.

There is no absolute rule of law that a person driving along a street in a city must look and listen for an approaching car before entering upon the tracks of an electric railway.

It is in the discretion of the judge presiding at a trial to permit a witness for the plaintiff to be recalled at the close of the evidence for the defendant.

In an action against a street railway corporation for personal injuries occasioned to the plaintiff by a collision with an electric car, if the defendant's witnesses have testified that the car, at the time of the accident, was going at the usual rate of speed, a witness for the plaintiff, who has been recalled at the close of the evidence for the defendant, may testify what that rate was, if there was a usual rate and he knew what it was.

TORT, for personal injuries occasioned to the plaintiff by the alleged negligence of the defendant. Trial in the Superior Court, before *Dewey*, J., who allowed a bill of exceptions, in substance as follows.

It appeared that on August 17, 1893, the plaintiff, who was then seventy-nine years of age, was driving a horse attached to a wagon along Worthington Street in Springfield; that the defendant corporation maintained a railway track on the street, upon which it ran electric cars and that the plaintiff, in attempting to cross from one side of the street to the other, drove upon the railway track, when one of the defendant's cars struck the plaintiff's wagon, and he was thrown therefrom and received the injuries complained of.

The plaintiff testified, in substance, that he left his house in Springfield, where he had lived for forty-three years, between nine and ten o'clock on the morning of the accident; that he was alone, and had a kind horse and a common market wagon with nothing in it; that he drove along the right hand side of Worthington Street going west, and turned towards the railway track to avoid a team which was standing at the curbstone, and just ahead of which was a watering cart; that he turned and looked both ways on the railway track to see if there was a car coming, and saw none; that he then started his horse diagonally across the track at a walk; that he had not got quite across the track when he heard an electric car; that he turned instantly and saw a car coming towards him from the east very fast, and the car struck the hind end of the wagon and he was thrown to the ground in an instant; that there was only one track for the cars at that point; that he did not hear the gong on the car sounded; and that he crossed the track for the purpose of avoiding obstructions, as there did not seem to be room for him to pass the watering-cart without going upon the track, or very close to it, and he thought it better to cross.

Upon cross-examination, he testified that he was well acquainted with Worthington Street, and used to pass over it occasionally; that he was blind in his left eye, which was the eye towards the railway track as he was coming down Worthington Street; that he was partially deaf in his left ear; and that he might have passed the team which was standing by the

curbstone without going upon the track, but he did not think there was room enough to go by the watering cart as it stood pretty well out in the street, which was quite narrow there.

The plaintiff also introduced evidence tending to show that the street was about three rods wide at the place of the accident, where the ground was quite level, and it was about a rod between the curbstone on each side and the nearest rail of the track; that there was a bright mark on both rails extending about thirty-five to forty feet from where the car apparently slid to the point where it stopped; and that the usual rate of running cars down Worthington Street at this time was from ten to fifteen miles an hour.

The defendant introduced evidence tending to show that the gong on the car was sounded repeatedly from a point seventy-five or a hundred feet distant from the place of the accident until the collision; that the car was not more than ten or twelve feet away when the plaintiff drove upon the track, that he did not seem to pay any attention to the ringing of the gong; that the car was going at the ordinary rate of speed, which was from four to six miles an hour; that the car was reversed before it struck the plaintiff's wagon; and that the bright marks on the rails did not extend more than ten or twelve feet.

At the close of the defendant's evidence, one Thayer, a witness for the plaintiff, being recalled, was asked the following questions: " Do you know what the usual rate of running cars down Worthington Street is, — the usual rate at that particular time?" To which he answered, "I should judge not less than ten miles an hour, and as high as fifteen." The defendant objected to this evidence, but the judge admitted it; and the defendant excepted.

The defendant asked the judge to give the following instructions:

" 1. Upon the whole evidence, the plaintiff cannot recover. 2. If the defects in the eyesight and hearing of the plaintiff, which defects were unknown and unnoticed by the motor-man, contributed directly to the plaintiff's injury, then he cannot recover. 3. If the plaintiff failed to look and listen, when, by looking or listening, he could have perceived the approach of the car, and the plaintiff drove in front of the car, and such

failure to look and listen contributed directly to his injury, then he cannot recover, and the verdict should be for the defendant."

The judge refused to give the instructions requested, and, among other things, instructed the jury as follows:

" There is evidence tending to show that the plaintiff's hearing was to a greater or less extent impaired, — how far impaired is for you to determine upon the evidence. It is conceded that the plaintiff had lost the sight of his left eye, and that he was a man somewhat advanced in years. Now what was his duty? Had he a right to be on the road at all? It cannot be said, as matter of law, that he has not a right to travel unattended on a street in a city. Whether in any sense he was in the exercise of prudence or negligence in being on the street is for the jury to determine. . . .

" He had a right to exercise his own judgment as to whether he would drive his horse and wagon into this city on that day or not, subject only to having the correctness of that judgment inquired into and passed upon by a jury, if the occasion should arise. In other words, suppose he did think that it was prudent and proper for him to go with his horse and carriage. If, upon the evidence, you think otherwise, so far as the purposes of this case are concerned, your judgment must govern, and you and he, — he first and you later, — upon the evidence, are the only parties that have a right to express any binding opinion upon that question. . . . Now, taking the plaintiff, with his age and with his infirmities — physical infirmities — admitted or proved, as the case may be, what sort of conduct did the law require of him? Well, I am going to read you a passage from an instruction given to a jury in a case of accident on a highway. That was a suit against a town for a defective highway. This is a suit against an electric railway for their alleged negligence, but, so far as the plaintiff's conduct is concerned, the principles will be the same, and so this is applicable to this case. . . .

" ' Now,' says the judge to the jury, ' in considering that question, you assume exactly what the law provides, that every person of any age, having any bodily infirmity, has a right to the use of the highway, either on foot or with any kind of a vehicle or horses. But while I state that these are the rights, these rights

are to be exercised with reference to the abilities of each person to take care of himself and take care of the rights of others. A blind person has a right to walk the street, — walk anywhere where a person with full sight has a right to walk; a person who cannot hear has the same right to walk anywhere. A lame person has a right to walk anywhere. But in view of the incapacities for taking care of himself which a blind man has, and of which he must be conscious, the exercise of ordinary prudence and caution would require him to conduct his case with reference to his inability to see. And if there was an inability to hear, so that a man could not take warning by the hearing of what was about him, or likely to put him in jeopardy, his wariness, in view of his infirmity of hearing, would be nothing more than the ordinary prudence and caution of a man who cannot take care of himself by listening.'

" After having reference to that portion of the instruction, the Supreme Court say the plaintiff was only bound to use ordinary care, but in determining what was ordinary care the jury were called upon to consider his blindness and other infirmities, and all the circumstances which bear upon the question of what care was reasonably necessary to insure his safety. Now, that is the principle of law obligatory upon the plaintiff in this case and under the circumstances connected with this accident. He had a right to be there. He had a right to ride upon the street. He had the same right to be in the highway and use the highway that the defendant corporation had. He had a right to cross the street under proper circumstances and with proper caution. He had a right, in crossing, of course, to drive over their tracks, either as a matter of convenience or a matter of preference, or for any other reason, only he must do it, if at all, in the exercise of proper care and caution. . . .

" Now the question has been discussed somewhat in regard to the special circumstances of this plaintiff, the duty of the motor-man in regard to them. Of course, a motor-man, a man in charge of an electric car, has a right, as a general principle, to act upon the presumption that persons whom he sees before him in the street, with teams or on foot, are in the enjoyment of their senses and their faculties, because that is the ordinary experience with men. It is what is ordinarily true, and so he has a right

to act upon this assumption of what is ordinarily true, and govern himself properly upon that assumption. But it does not follow from that, that in no case is he required to qualify his conduct in any way. For instance, suppose he sees a young child on the track, and another time he sees a man, of full age, in apparent health and in possession of all his faculties, standing on the track and talking. It does not follow, as matter of law, that his conduct in both cases should be the same. It may be. It would be for you to say, if such a case arose, whether ordinary prudence and caution did not require him to be more on his guard with reference to the child than with reference to the man, — whether he would be warranted in making the presumption that the child would realize his danger and take himself out of the way that he would be justified in making in reference to the man. . . .

" The motor-man here handling this car would have a right to assume that the plaintiff was a man in the possession of all his ordinary faculties, if he did not know to the contrary, unless there was something in the conduct and management of the plaintiff which, with reasonable attention on the part of the motor-man, would have informed him that there was some imperfection in regard to the plaintiff's condition.

" Now take, for instance, this matter of sounding the gong. Was the gong sounded? If so, was there anything in the conduct of the plaintiff under the circumstances which ought, reasonably, to have given the motor-man to understand that there was some inability in the plaintiff to hear? It has been argued on one side that there was; and it has been argued on the other side that there was not, — that the motor-man, or some of these witnesses, have testified that there was nothing in that respect peculiar in the conduct of the plaintiff, nothing that would, reasonably interpreted and understood, give rise to any suspicion on the part of the motor-man that there was any infirmity, — that his apparent indifference, as it is claimed, to the sound, if the gong was going, was not unusual. Of course, conduct of the motor-man in a matter of that kind has to be judged by what is usual. If he finds in his experience in running cars that men are ahead, driving their buggies; and he sounds the gong, rings the gong, whatever the proper term may be, and they

do not look around usually, in so far as their movements are concerned in looking about do not give any indication that they hear it, but perhaps do act upon it, perhaps in directing their horses and getting off the track, then he had a right to avail himself of that ordinary experience in judging of the conduct of this plaintiff. If, on the contrary, his ordinary and usual experience has been that, whenever he rang his gong under such circumstances, travellers looked about, looked back and made a visible demonstration and change in their position and conduct, then that would be a matter that he would have to take into account in judging of the plaintiff's conduct. All that the law required of him in that respect would be to give reasonable attention to the plaintiff's conduct, and draw such inferences from it as a man of ordinary intelligence and prudence ought to draw, in view of the experience which a man in his position has."

The jury returned a verdict for the plaintiff ; and the defendant alleged exceptions.

*W. H. Brooks & W. Hamilton,* for the defendant.

*J. B. Carroll & W. H. McClintock,* for the plaintiff.

FIELD, C. J.   The questions of the due care of the plaintiff and of the negligence of the defendant's servants, we think, were for the jury, on the evidence which appears in the exceptions. The first request for instructions was therefore properly refused. *Driscoll* v. *West End Street Railway,* 159 Mass. 142. *Ellis* v. *Lynn & Boston Railroad,* 160 Mass. 341.

The second request ought not to have been given in the form in which it was offered, and the instructions upon this part of the case were correct. *Neff* v. *Wellesley,* 148 Mass. 487.

The third request could not properly have been given as an absolute rule of law. The decisions of this court show that a distinction has been taken with respect to the duty to look and listen when crossing the tracks of a steam railroad where a railroad train has the exclusive right of way, and when crossing the tracks of a street railway company in a public street where the cars have not an exclusive right of way, but are run in the street in common with other vehicles and with travellers. The fact that the power used by the street railway company is electricity, instead of that of horses, has not been deemed by the court sufficient to make the rule of law which has been laid

down concerning the crossing of the track of a steam railroad exactly applicable to a street railway. *Creamer* v. *West End Street Railway*, 156 Mass. 320. *Benjamin* v. *Holyoke Street Railway*, 160 Mass. 3.

It was in the discretion of the court to permit the witness Thayer to be recalled at the close of the defendant's testimony, and, in view of the fact that some of the defendant's witnesses had testified that the car at the time of the accident was going at the usual rate of speed, we see no harm in permitting a witness to testify what that rate was, if there was a usual rate and he knew what it was.          *Exceptions overruled.*