PETER LAHTI *vs.* FITCHBURG AND LEOMINSTER STREET
RAILWAY COMPANY.

Worcester.    October 4, 1898. — October 21, 1898.

Present: FIELD, C. J., KNOWLTON, MORTON, BARKER, & HAMMOND, JJ.

*Personal Injuries — Due Care.*

At the trial of an action for personal injuries occasioned to the plaintiff by the
collision of the wagon in which he was riding with an electric car of the de-
fendant at the point of intersection of M. and P. Streets, the former of which ran
east and west and the latter north and south, it appeared that the car was going
slowly ; that the plaintiff was nearly across the track at the time of the collision;
that there was a high board fence on the southerly side of M. Street at its junc-
tion with P. Street, which was an obstruction to the plaintiff's westerly view of
M. Street until he reached a point fifteen feet southerly of the south rail of the
railway track in that street; that he looked up M. Street and saw nothing;
that he heard no gong or bell; that he was going "a little faster than a walk,"
and "slowed up a little before he got on to the track"; and that "when he got
on to the track he hurried up his horse." *Held,* that there was evidence for the
jury that the plaintiff was in the exercise of due care.

TORT, for personal injuries occasioned to the plaintiff by a col-
lision between a baker's cart driven by him and an electric car of the
defendant.    At the trial in the Superior Court, before *Hopkins,*
J., there was evidence tending to show that the collision occurred
on April 27, 1897, at about 5.45 o'clock P. M., in Fitchburg, at the
point of intersection of Main Street with Putnam Street; that
Main Street runs east and west; that Putnam Street runs north
and south ; that the two meet at right angles ; that the track of
the defendant was laid in the centre of Main Street ; that at the
time of the collision the plaintiff was driving from Putnam Street
northerly across Main Street, and the electric car of the defendant
was proceeding easterly on Main Street ; that a new building was
in process of erection on the southerly side of Main Street and
westerly side of Putnam Street, and that there was a high board
fence on the southerly side of Main Street ; that the distance from
the track to the curbing was 15.7 feet, and this fence was erected
in the street at a distance, according to the testimony of various
witnesses, of from 10 feet to $13\frac{1}{2}$ feet from the track ; that to any
one approaching Main Street from Putnam street this fence was

an obstruction to the westerly view of Main Street, but that at a point 15 feet southerly from the south rail of the railway track in the line of travel from Putnam Street to Main Street there was a view westerly upon the street railway track for a distance of 349 feet; and that this view of the track increased in distance as the track was approached, and that view of the track decreased rapidly as the point of observation was removed beyond a distance of 15 feet.

The plaintiff testified .that he was driving a four-wheeled baker's cart, which was covered on all four sides and on the top with wood or canvas, except the glass windows hereinafter mentioned; that it had a door on each side opening between the front and rear wheels, and a seat inside extending across the cart; that he was sitting on the seat and driving with a rein in each hand; that the doors were closed; that in front of him was a counter three feet high, and above the counter at the front end of the cart and four feet from his seat was a glass window; that as he sat on the seat the top of the cart was two feet above the top of his head; that the side doors extended to the top of the cart and were of wood, with a glass window nine to sixteen inches wide at the top; that the reins ran through holes at the top of the glass window in front; that when he came into Main Street he looked up the street and saw nothing; that he could see but a very little distance because the fence referred to was in his way; that after he looked up the street, he looked easterly down Main Street, and then looked round; that he first looked through the front and then through the glass inside doors, and saw nothing; that he was driving across Main Street when the car struck the wagon; that he did not hear any gong or bell; that he was going a little faster than a walk; that he slowed up a little before he got on to the track; that when he got on to the track he hurried up his horse; and that he had driven over these streets many times, and at this time was driving in the centre of Putnam Street.

Other witnesses testified that the car approached the point of collision at a very slow rate of speed, and all the evidence was uncontroverted that the car stopped within one or two feet from the point of collision. There was evidence, and the plaintiff's counsel contended, that by reason of the slow rate of speed at

which the car was running the motorman had full control of the car, and ought to have stopped it before the collision.

One Hurley, who was a passenger on the car, testified that he first saw the cart at the moment of collision, and that his attention was attracted to it at that moment either by the bell or by the fact that the brakes were applied.

At the conclusion of the evidence the defendant asked the judge to rule that there was not sufficient evidence that the plaintiff was in the exercise of due care to warrant a verdict for the plaintiff. The judge refused so to rule, and the defendant excepted.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*C. F. Baker*, for the defendant.

*J. E. McConnell*, for the plaintiff.

FIELD, C. J.   The single question in this case is whether there was evidence for the jury that the plaintiff was in the exercise of due care. We think that there was. There was evidence that the car was going at a slow rate, that the plaintiff was nearly across the track at the time of the collision, that there was a high board fence on the southerly side of Main Street at its junction with Putnam Street which was an obstruction to the plaintiff's westerly view of Main Street until he reached a point fifteen feet southerly of the south rail of the railway track in that street, that the plaintiff looked up Main Street and saw nothing, that he heard no gong or bell, that he was going " a little faster than a walk," and " slowed up a little before he got on to the track," and that " when he got on to the track he hurried up his horse." We think this was evidence of the plaintiff's due care, to be submitted to the jury. *Driscoll* v. *West End Street Railway*, 159 Mass. 142.  *Robbins* v. *Springfield Street Railway*, 165 Mass. 30.  *White* v. *Worcester Consolidated Street Railway*, 167 Mass. 43.

*Exceptions overruled.*