# SCHAFSTETTE v. ST. LOUIS & MERAMEC RIVER RAILROAD COMPANY, Appellant.

### Division One, May 27, 1903.

1. **Appellate Jurisdiction: CONSTITUTIONAL QUESTION: NINE JURORS.** An appeal by defendant from a judgment for damages for personal injuries based on negligence, if the constitutionality of the amendment permitting nine jurors to make a verdict is called in question, is to the Supreme Court, although that point has been definitely settled by former decisions of this court.

2. **Expert: PERSONAL CHARACTER OF WITNESS IN ANSWER.** The answer of a witness to the effect that a car "running at the rate of ten miles an hour could have been stopped in sixty feet with the brakes," eliminates the personal character of the question, "In what distance could you possibly stop the car?" The error of the question is cured by the answer, the objection being that the question was not confined to a motorman of ordinary strength, skill and care. Especially is this error cured under the circumstances of this case.

3. **———: CONTRIBUTORY NEGLIGENCE: DRIVING ON TRACK.** The court can not say as a matter of law that the driving on to a street car track by a huckster who has seen a car five hundred feet away, which runs into his wagon, was contributory negligence. Nor can the court say, as a matter of law, that, under such circumstances, it was his duty to stop and wait until the street car had passed.

4. ———: STOPPING CAR: DUTY OF COMPANY. If a person is on or so near a track that a car can not pass without a collision, and the operator of the car sees or by the exercise of ordinary care can see the condition of danger of such person, it is his duty to check the speed of the car, or even to stop entirely, to prevent injury to such person. This duty is just the same between street cars and a citizen as it is between any two citizens using the street.

5. ———: ———: DEMANDS OF TRAVELING PUBLIC. The traveling public has no right to demand such rapid transit on cars in a street of a city as to amount to negligence in the running of the cars. And the citizen who is not in a hurry, but is exercising ordinary care, has rights that are just as sacred as those of the hurrying crowds who demand rapid transit.

6. ———: TESTIMONY OF PLAINTIFF: HOW FAR BINDING ON HIM. Where plaintiff drove on to the track when the car was five hundred feet away, and the operator could have seen him for that distance, it is wholly immaterial whether the car struck him eighteen feet south of the point where it crossed another track or much further, and the testimony of the plaintiff as to the distance in such case is a matter of opinion, and he is not bound thereby without regard to what any other witnesses may say about it.

7. ———: CAR ON TRACK. A street car is entitled to the right of way on its own track, but this does not warrant the operator of the car in running into a vehicle that happens to be on the track or in not using ordinary care to prevent a collision therewith.

8. ———: INABILITY TO STOP CAR: NO EVIDENCE. The jury should not be told that the defendant is not liable if the operator in charge of the street car could not have stopped it after he saw plaintiff before striking him, no matter how fast the car was running, unless there is some evidence on which to base the instruction. That instruction is applicable where plaintiff suddenly put himself in danger and the operator had not sufficient time to have avoided the injury. But it is not applicable where the operator ran his car into the rear end of a wagon which he could have seen for five hundred feet was on the track.

9. ———: RUNNING INTO WAGON: DRIVING INTO CAR: CONVERSE THEORIES. Plaintiff based his action on the allegation that defendant ran its car into the rear end of his wagon while on its track, and the instructions on this theory were full and explicit. *Held*, that it was not reversible error to refuse an instruction for defendant presenting the converse theory that plaintiff could not recover if he drove his wagon into the side of the car, as some of the witnesses testified, since the defendant could not have been damaged by such refusal.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge.

AFFIRMED.

*McKeighan & Watts* and *Robt. A. Hollond, Jr.,* for appellant.

(1) The court erred in refusing to give on behalf of defendant, an instruction in the nature of a demurrer to the evidence, offered at the close of all the evidence. (a) Because the evidence shows that plaintiff himself was guilty of negligence which directly contributed to cause the collision in question. Payne v. Railroad, 136 Mo. 534; Yancey v. Railroad, 93 Mo. 433; Kelsey v. Railroad, 129 Mo. 369; Lenix v. Railroad, 76 Mo. 86; Culbertson v. Railroad, 140 Mo. 35; Kreis v. Railroad, 148 Mo. 321; Maxey v. Railroad, 113 Mo. 1. (b) There was no evidence that the motorman, after the plaintiff put himself in a position of danger, was guilty of any conduct that would make defendant liable, in spite of the contributory negligence of plaintiff. Boyd v. Railway, 105 Mo. 371; Watson v. Railroad, 133 Mo. 246; Davies v. Railroad, 159 Mo. 1; Tanner v. Railroad, 161 Mo. 497; Sharp v. Railroad, 161 Mo. 214. (2) The court erred in giving instruction 1 at the request of plaintiff. This instruction submitted to the jury the question as to whether or not defendant was guilty of contributory negligence, when there was absolutely no evidence tending to show that plaintiff exercised ordinary care. It is erroneous to give an instruction where there is no evidence upon which to base it. Stone v. Hunt, 114 Mo. 66; State v. Hope, 102 Mo. 410; State v. Brown, 145 Mo. 680; Evans v. Interstate Company, 106 Mo. 594. (3) The court erred in refusing to give instruction B, offered by defendant. Said instruction stated in effect that plaintiff was bound by his own testimony given in this case, and should have been given.

State v. Brooks, 99 Mo. 137; Feary v. Railroad, 162 Mo. 106; Irwin v. Railroad, 68 S. W. 91; Holmes v. Leading, 69 S. W. 323.   (4)   The court erred in refusing to give instruction C at the request of defendant, said instruction in effect stating that if the accident did not happen in the manner alleged in the petition, plaintiff could not recover.   Chitty v. Railroad, 148 Mo. 64; McManamee v. Railroad, 135 Mo. 440; Waldheir v. Railroad, 71 Mo. 314; McCarty v. Hotel Company, 144 Mo. 397.

*Wm. L. Bohnenkamp* and *Wm. R. Gentry* for respondent.

The demurrer to the evidence was very properly overruled.   The court could not have done otherwise under the evidence.   It sustained every material allegation in the petition.   Before getting near enough to the track to be struck, plaintiff looked north, in the abundance of precaution.   The motorman, who was six hundred feet away, when plaintiff started on the track, comes rushing on, looking back for passengers, without any bell or other warning, overtakes the old man, strikes his wagon, throws him out, and then goes on one hundred and fifty feet further before stopping.   The evidence of witness Montgomery showed that the motorman could have stopped in forty feet.   Under these circumstances, even if plaintiff had been guilty of negligence in driving near the track, the motorman had time to stop his car, start it and stop it over again several times after the danger became apparent, and could have avoided striking the plaintiff very easily.   Under the decisions of this court, not merely the ancient decisions, as appellant would have us believe, but under the well-established law of to-day, it was the duty of defendant's motorman to avoid the accident by stopping or slacking the speed of the car.   Morgan v. Railroad, 159 Mo.

262; Grocer Co. v. Railroad, 89 Mo. App. 391; McAndrew v. Railroad, 88 Mo. App. 97; Klockenbrink v. Railroad, 81 Mo. App. 351; Baird v. Railroad, 146 Mo. 265.

MARSHALL, J.—This is an action to recover damages for personal injuries sustained by the plaintiff, on December 7, 1899, on Fair avenue, just south of Green Lea place, in St. Louis, in consequence of a collision between one of defendants cars and the plaintiff's wagon.    The negligence assigned is that while the plaintiff was driving his wagon along Fair avenue, near defendant's tracks, the defendant's servants "did so negligently, carelessly, unskillfully and wrongfully manage, operate, control and run at a high and unusual rate of speed one of its south-bound cars along its east track as to cause the same to run against and collide with, and the same did run against and collide with the rear end of said wagon, in which plaintiff was driving as aforesaid, and that said defendant's servants and agents, at the time saw said wagon, or by the exercise of reasonable care might have seen said wagon and said plaintiff in his perilous position in time to stop said car before striking or running against said wagon, and knew or by reasonable care might have known that its said car could not pass plaintiff's wagon at that point without striking it."

The petition also sets out the ordinance of St. Louis which requires the conductors, motorman, gripman, driver and any other person in charge of a car to keep a vigilant watch for vehicles and persons either on the track or moving towards it, and on the first appearance of danger to stop the car in the shortest time and space possible, and that in consideration of the franchise granted to it by the city, the defendant had contracted and agreed to be bound by the ordinance aforesaid. The petition pleads a failure by the defendant to comply with the ordinance.

The answer is a general denial and a plea of contributory negligence, in that the ''plaintiff drove toward the track on said Fair avenue without looking and listening to see whether or not a car was approaching on said track; and that said plaintiff, without so looking and listening drove towards the said track and against an approaching car of the defendant.''

There was a verdict for the plaintiff for seventeen hundred and fifty dollars, and the defendant appealed. The case came to this court because the constitutionality of the nine-juror law is called in question. That, however, is now settled by Gabbert v. Railroad, 171 Mo. 84. But the case is, nevertheless, properly here for adjudication upon the merits.

The case made by the plaintiff is this:

Green Lea place runs east and west, and intersects Fair avenue, which runs north and south. The defendant has a street car line on Fair avenue. At the time of the accident only the east track (which is the north bound track) was completed, and for about four weeks before the accident the defendant's cars had run both ways over the one track. Fair avenue and Green Lea place were unimproved streets. At the southeast corner of said streets there was an iron post about in the line of the sidewalk. The roadway between the post and the track was very narrow, and there was a ditch on the sidewalk, and this, with the fact of the location of the pole on the corner, made it necessary in driving from Green Lea place onto Fair avenue and going to the south on the east side of Fair avenue, to drive close to the track. The plaintiff was a huckster and had been in the habit of peddling vegetables in this neighborhood, and knew the conditions existing at the place in question. He drove west on Green Lea place to its intersection with Fair avenue, intending to go south on the east side of Fair avenue. As he reached Fair avenue he first looked to the north on Fair avenue, and saw a car ''at the curve,'' which he says was a block and a half

away.  He then looked to the south on Fair avenue, and seeing no car he turned from Green Lea place onto Fair avenue, towards the south.  In doing so he had to drive close to or upon the track, in order to avoid the pole at the corner.  He says as soon as he made the turn at the corner, he pulled in towards the east, in order to get away from the track, but when he had gone only eighteen or twenty feet, the car  coming from the north struck the hind wheel of his wagon, and the collision threw him off the wagon and injured him.  One of the plaintiff's witnesses, a lady who saw the accident, says that the plaintiff was trying to get away from the track, and was not on the track or within range of the car more than a minute.  Another witness for the plaintiff testified that just before the collision a citizen hailed the car, and he saw the motorman look back to see if he had gotten on the car, and then he looked forward again, and immediately put on the brakes anl tried to stop the car, but did not succeed in doing so in time to avert the collision, and that at that time the plaintiff's wagon was fully off the track but not out of range of the car.

The citizen who hailed the car, testified, however, that he hailed the car when it was from fifty to one hundred feet north of Green Lea place, but that the motorman looked straight ahead and paid no attention to him and did not stop to let him get on the car.  He further testified that Green Lea place is a sixty-foot street; that the street is nearly level; that the car was running about ten miles an hour.  The witnesses differed in their estimates of how far the plaintiff's wagon was south of the intersection of Green Lea place and Fair avenue, when it was struck.  The plaintiff said it was eighteen to twenty feet.  Other witnesses put the distance at forty, fifty and a hundred feet.

An ex-motorman was called as a witness for the plaintiff and after much preliminary examination, in which all the circumstances and conditions were gone into, he was asked:  "In what distance could you possi-

bly stop the car?'' This was objected to, ''as not containing the proper elements for an expert's answer on the question involved.'' The objection was overruled and the defendant saved an exception. The witness then answered: ''It could have been stopped, if the car was running at the rate of ten miles an hour, with the brakes in sixty feet,'' or by using the reverse power in forty to forty-five feet. This ruling is complained of on the ground that it calls for what the witness could do and not for what a person of ordinary strength and skill could do. But the answer was: ''It could have been stopped,'' etc., thus ignoring the personal character of the inquiry, and answering the question as an expert.

The defendant's motorman and conductor testified that when the car approached Green Lea place there was a citizen at the southwest corner of that street and Fair avenue who was signaling to the car to stop for him to board it; that the car was running about four and a half to five miles an hour; that while attempting to make the stop for the citizen, the plaintiff turned the corner with his wagon and drove into the car; and the front wheel of his wagon caught in the front gate of the car and the wagon was dragged a short distance, but that the wagon was not turned over, and neither it nor the car was injured, but the plaintiff got frightened and jumped off the wagon; that the wagon thus ran into the car about five to eight feet south of Green Lea place, and that the rear of the car was about even with the south crossing of Green Lea place at that time. The motorman testified that a car running at the rate of five miles an hour can be stopped by using the brakes in forty feet, which he says is the length of the car. The motorman and conductor testified that the car was stopped in half a car length after the collision. The errors assigned relate to the admission of the evidence of the plaintiff's expert witness, and to the instructions given for the plaintiff and refused for the defendant.

## I.

Whatever merit there may have been in the objection to the hypothetical question propounded to the plaintiff's expert on the ground that it required him to say within what space he could have stopped the car and not within what space a man of ordinary strength and skill could have stopped the car, was cured by the answer of the witness, which ignored the personal character of the question and answered the question from the standpoint of an expert. He placed it at sixty feet. But it is also to be observed that the defendant's motorman testified that the car could have been stopped in forty feet, if it was running at five miles an hour as he said this car was, and that in fact this car was stopped in half a car-length, which was twenty feet, after the collision. Moreover, it must be noted that it is uncontradicted that for a block and a half north of Green Lea place, the track was straight, and the motorman could have seen any obstruction on the track, or any one approaching the track. It must be further remembered that the defendant's witnesses say the car was being signaled by a citizen, who was standing on the southwest corner of Green Lea place and Fair avenue, to stop so he could board it. Under these circumstances the error in the question propounded to the plaintiff's expert does not constitute reversible error, for the other testimony and circumstances of the case fully advised the jury of what other persons of ordinary strength and skill could do, and particularly of what the motorman in charge of this car could do in this regard.

## II.

It is contended that the peremptory instructions asked at the close of the plaintiff's case and again at the close of the whole case should have been given.

This contention is based upon the theory that the plaintiff's own evidence shows he was guilty of such contributory negligence as bars a recovery. The specific negligence claimed is that the plaintiff drove upon the track, or so near to it as to make a collision unavoidable, when he saw a car coming a block and a half away. The length of the blocks in the outlying part of the city where this accident occurred is not stated, but assuming them to be the usual length of three hundred feet, the fact is then presented that the plaintiff drove upon the track when the car was about five hundred feet away, that is, about the width of Green Lea place, which is sixty feet, and the distance of a block and a half. The court is asked to say, as a matter of law, that to thus drive onto a track, or to turn into a street, when a street car is coming but is five hundred feet distant, constitutes such contributory negligence that the plaintiff can not recover, if the street car runs into the rear of the vehicle. The court is further asked to declare as a matter of law that under such circumstances it is the duty of the citizen to stop and wait until the street car has passed. And Boyd v. Railroad, 105 Mo. 371, and Watson v. Railroad, 133 Mo. 246, are especially relied upon to support these contentions. Those cases correctly declare the law to be that, "one who knowingly crosses a track of a railway, in such close proximity to a moving train as to be struck thereby before he could cross," is guilty of such concurring negligence as bars a recovery, and that the operatives of a train, seeing a person, who is *sui juris*, approaching the track, have a right to presume that he will stop at a safe distance from the track and not attempt to cross "immediately in front of the train."

The law thus declared is correct, but it does not apply to, or fit the conditions presented by this case.

The plaintiff did not attempt to cross the track "in such close proximity to a moving train as to be struck thereby before he could cross," nor "immediately in front of the train." The car was five hundred feet dis-

tant when he went upon the track, and the motorman could have seen that he was upon the track when the car was that distance away from him, and could further have seen that he was not attempting to cross the track at all, but was driving on or near the track and in the same direction that the car was traveling, thus having his back to the car, while the motorman had his face towards the plaintiff's wagon and could not help from seeing it, if he had looked, and must be held in law to have seen it, because by the exercise of the slightest degree of care he could not fail to see it.

In the Boyd case the deceased stepped upon the track "immediately in front of the engine" which was running at a speed of forty or forty-five miles an hour. In the Watson case the deceased was struck "when about stepping" on to the track. Such cases are so radically different from this case that they can have no possible application.

It is argued, however, that if street cars are required to check up every time a person approaches the track no time can be made and that the traveling public demands rapid transit. It is true that street cars are not compelled to check up every time a person approaches a track, but it is equally true that if a person is on or so near a track that a car can not pass without a collision, and the operator of the car sees or by the exercise of ordinary care can see the condition of danger of such person, it is his duty to check the speed of the car or even stop the car entirely to prevent injury to the person. This duty is just the same between street cars and a citizen as it is between any two citizens when using a street. The traveling public has no right to demand such rapid transit on streets of a city as to amount to negligence in the running of the car. The citizen who is not in such a hurry, but is exercising ordinary care while upon the street, has rights that are just as sacred in the eye of the law as those of the hurrying crowds who demand such rapid transit, and if a street car com-

pany heeds the demands of the latter class and thereby negligently injures the former, it must stand the consequences. The rights and duties of street car companies and citizens traveling in vehicles are thus stated in the recent case of Oates v. Railroad, 168 Mo. l. c. 544:

"The sum of the adjudicated cases bearing upon the relative rights and duties of street cars and citizens traveling in vehicles drawn by horses or other animals is, that both have a right to use the street, but that neither has an exclusive right. The operator of a street car is not necessarily obliged to stop the car every time a horse shies or scares at the approaching car, but when the operator of the car sees that a horse is frightened at the car, it is his duty to manage his car in such manner as a man of ordinary prudence would do under the same circumstances, and it is always a question of fact for the jury whether such care in the running of the car has been observed. This duty may or may not lead to the necessity for bringing a car to a full stop. The duty of the company in this regard is just the same as the duty of one individual or citizen to another when they meet on the highway and the horse of the one becomes frightened at the vehicle of the other, or at anything upon the vehicle of another. Because a street car carries more people than any other kind of conveyance, or because it is authorized to run more rapidly than a vehicle can ordinarily be legally driven, or because the rush and restlessness of the age make unreasonable demands for more and more rapid transit along the crowded thoroughfares of populous cities, it does not follow that a street car can be run in disregard of the rights of persons traveling by other means, nor that a street car company is exempt from the common-law duty of every one to exercise ordinary care, nor that it is only liable where the agents act wantonly, maliciously and heedlessly. [Benjamin v. Railroad, 160 Mass. l. c. 5, citing and following Commonwealth v. Temple,

14 Gray 69, and Driscoll v. Railroad, 159 Mass. 142; Ellis v. Railroad, 160 Mass. 341.]''

It is not true as a matter of law, and prima facie can not be true as a matter of fact, that it is negligence for a citizen to cross or drive upon and along a street car track when a street car is five hundred feet away, although it may be coming in the same direction, and running at the speed of five, ten or even more miles an hour, when the track is straight and the operator of the car can easily and plainly see that such person is in such a position. In such case, particularly where the citizen turns onto the track and drives upon or close to it, with his back to the approaching car, it is the duty of the operator to check the car and avoid the accident, and if a collision occurs it is prima facie if not altogether owing to the negligence of the operator of the car. It was not, therefore, error to refuse to give the peremptory instructions asked. And what is here said applies equally to the objection to the plaintiff's instructions given, for the same point is made against them, to-wit, that there was no evidence that the plaintiff was exercising ordinary care, but on the contrary that his contributory negligence barred his recovery.

## III.

To fully appreciate the force of the reasons given for the error claimed in refusing certain instructions asked by the defendant, it is necessary to set out the instructions that were given for the defendant, which are as follows:

''3. The court instructs the jury that if they believe from the evidence that at the time of, and immediately before, the collision between the car and plaintiff's wagon, the plaintiff, by the exercise of ordinary care in looking out for the approach of a car on the east track of defendant's line, could have avoided said collision, and that he omitted to use such care up to the time of

such collision, and that his said omission directly contributed to produce the said collision, then your verdict should be for the defendant.

"4. The court instructs the jury that if they find from the evidence that by exercising ordinary care plaintiff, up to the moment of the said collision of his wagon and the car, could have avoided said collision, and that the collision occurred because plaintiff failed to exercise such ordinary care to avoid it, then your verdict should be for the defendant; even though you may further find from the evidence that the defendant's employees in charge of the car in question were also guilty of negligence in any of the particulars charged or alleged by the plaintiff in this case.

"5. The court instructs the jury that the burden of proof is upon plaintiff to establish by a preponderance of the testimony the facts on which plaintiff charges negligence on the defendant; and unless plaintiff has so established said facts, then the verdict of the jury should be for the defendant.

"6. The court instructs the jury that there is no proof before them that the car was running at any excessive or forbidden rate of speed, at or before the time when the collision occurred."

The defendant asked twelve other instructions, lettered from B to M inclusive, which the court refused to give, and error is assigned as to the refusal of each (except D) and they will therefore be separately set out and considered.

Instruction B is as follows:

"B. The court instructs the jury that they should accept as a fact admitted by the plaintiff his statement as a witness to the effect that the spot where the collision took place was less than twenty-five feet south of the trolley pole on the southeast corner of Green Lea place and Fair avenue."

It is claimed that as the plaintiff said the collision occurred about eighteen to twenty feet south of the in-

tersection of Green Lea place and Fair avenue, he was conclusively bound by that statement, without regard to what any other witness said about the distance, and State v. Brooks, 99 Mo. 137, and Feary v. Railroad, 162 Mo. l. c. 105, are relied on to support the contention. Those cases decide that a party is bound by his oral admission as well as by the admissions in his pleadings. But they have no application to this case, where it was simply a matter of judgment or opinion as to the *locus in quo.* It is claimed that the question of such distance has a bearing on the negligence of the defendant. But as the plaintiff entered upon the track when the car was five hundred feet away, and as the operator of the car could have seen the plaintiff for five hundred feet before the car reached Green Lea place, it is wholly immaterial whether the collision occurred eighteen feet or an hundred feet south of Green Lea place, for the operator had plenty of time to stop the car before it got to Green Lea place, or to slow it up and avoid the collision. Abstractly the instruction was correct, but there was nothing in this case to warrant the giving of such an instruction.

Instruction C is as follows:

"C. The court instructs the jury that unless they believe from the evidence that the car collided with the rear end of the plaintiff's wagon, the jury should find for the defendant."

It is claimed that the petition charged that the collision was with the rear end of the wagon, whilst the evidence for plaintiff was that the car struck the hind wheel of the wagon, and hence it is contended that the instruction should have been given on the authority of Chitty v. Railroad, 148 Mo. 64. The hind wheel of a wagon is most assuredly a part of the rear end of a wagon. The evidence therefore did not tend to show that the accident occurred from a cause other than that specified in the petition, and, therefore, the Chitty case is not applicable and there was no error in refusing

this instruction.    Moreover, this point was fully covered by the instructions given.

Instruction F is next complained of, and is as follows:

"F.    The court instructs the jury that the cars had the right of way on the east track of defendant's line at the place where the accident to plaintiff occurred, and that it was the duty of the plaintiff to exercise ordinary care to keep out of the way of cars moving on said track; and if you find and believe from the evidence that plaintiff's omission to use ordinary care (which included the duty to look out for cars approaching on the east track at the place where the injury occurred) contributed directly to produce the said collision, then your verdict should be for the defendant, even should you further be of the opinion that the defendant's motorman was negligent in any of the particulars charged in this case.    If you find that plaintiff omitted to use ordinary care as above mentioned, then your verdict should be for the defendant."

What is herein said with reference to the peremptory instructions applies here so far as the plaintiff's contributory negligence—or rather want of it—is concerned.    As to the remainder of the instruction, it need only be said that while a street car is entitled to the right of way on its own tracks, this does not warrant the operator of the car running into a vehicle that happens to be on the track or in not using ordinary care to prevent a collision with such a vehicle.    Such is the gravamen of this case.    This instruction was, therefore, properly refused.

Instruction G is next complained of, and is as follows:

"G.    The court instructs the jury that if they find from the evidence that the motorneer (in charge of the car which struck plaintiff's wagon) could not, by the exercise of ordinary care on his part, avoid the collision after plaintiff's wagon approached so near the track as

to be within striking distance of a car moving thereon, then your verdict should be for the defendant, no matter at what rate of speed you may find the car was running at the time when defendant's motorman, by the exercise of ordinary care, could have discovered that plaintiff's wagon was so near the car as to be in danger of being struck by the car.''

There was no evidence upon which this instruction could possibly rest. As hereinbefore several times said, the operator of the car had a free and unobstructed view of the plaintiff on or approaching the track for at least five hundred feet before the collision occurred. This is not a case where the plaintiff suddenly put himself in danger and the operator of the car had not sufficient time to stop the car. It is a case of the operator of the car running into the rear end of a wagon that he could have seen was on the track when he was yet five hundred feet away. At least that is the plaintiff's showing, and so says the verdict of the jury. True the defendant's showing is that the wagon ran into the car and not the car into the wagon. But whichever is the truth, the instruction would have no place in the case.

Instruction H is as follows:

''H. The court instructs the jury that the railroad tracks of defendant at the place where plaintiff received his injuries were notice to plaintiff of danger in driving upon the same; and that it was the duty of the plaintiff, before going upon or approaching said tracks near enough to be within range of a car running thereon, to look out for the approach of a car on said tracks; and the jury are further instructed that if they believe from the evidence that the plaintiff on the occasion in question drove so near the east track of defendant's line as to be within range of a car running thereon, without looking out for an approaching car, and that if he had looked out for an approaching car and had used ordinary care to avoid the collision he would not have re-

ceived his injuries, then your verdict should be for the defendant.''

Whilst this instruction was abstractly correct it was already covered by the instructions given for the plaintiff and the defendant, and in addition it assumed that there was evidence to support the theory that the plaintiff drove on to the track or near to, without looking out for the car, when such was not the fact and all the evidence in the case showed that the plaintiff looked before driving on to the track and saw the car coming, but it was five hundred feet away and threatened no injury to any one turning into the street or upon the track. This instruction was properly refused.

Instruction I is as follows:

''I. The court instructs the jury that if they find, and believe from the evidence, that the collision for which plaintiff brings this suit was occasioned partly by the negligence of the motorman in charge of defendant's car and partly by the omission of the plaintiff to exercise ordinary care, and to look out for said car, and that the negligence of both parties aforesaid directly contributed to the accident to the plaintiff, then your verdict should be for the defendant.''

This instruction was covered by instruction numbered 4 given for the defendant.

Instruction J is as follows:

''J. The court instructs the jury that if you find from the evidence that plaintiff's wagon ran into the car on the side as the wagon and car were passing along towards the south, then your verdict should be for the defendant.''

This instruction expresses the defendant's theory, and it should have been given unless it is essentially covered by other instructions given. Plaintiff's instruction numbered 1 limited the plaintiff's right to recover to the jury finding the fact to be that the car ran into the rear of the wagon, which of course is wholly inconsistent with the theory or fact that the wagon ran

into the front end of the car.   Defendant's instruction numbered 5 also limited the plaintiff's right to recover to his showing that the accident occurred in consequence of the negligence charged against the defendant.   Under these instructions, if the jury found the fact to be that the wagon ran into the car and not the car into the wagon, the plaintiff was not entitled to recover.   The issues were thus very simply and sharply drawn, the jury was instructed positively as to the conditions upon which the plaintiff would be entitled to a verdict, and it was not essential that the converse of the proposition should be stated to the jury, to-wit, that the defendant was entitled to a verdict if the jury failed to find the facts to be such as it was declared necessary that they should be to entitle the plaintiff to recover.   The jury could not have failed to understand the rights of the parties from the instructions given, and the defendant can not be said to have been damaged by the refusal to give this instruction.

Instruction K is as follows:

"K.   The court instructs the jury that it was not the duty of defendant's motorman to begin to stop the car merely because plaintiff's wagon was in view, driving in the same direction as the car, and by the side of the track on which the car was running.   The defendant's motorman had no duty to stop the car until plaintiff's wagon was so near the track as to be in danger of colliding with the car running thereon.   If you find and believe from the evidence that from the moment when plaintiff's wagon approached so near the track as to be in danger of the collision until the time of the actual collision, the defendant's motorman in charge of the car could not, by the exercise of ordinary care on his part, stop the car in time to avert the collision, then your verdict should be for the defendant."

What is hereinbefore said in reference to the instructions for a nonsuit and in reference to defendant's

instruction G, applies equally to this instruction, and need not be repeated here.

Instruction L is in almost the same language as the last sentence of instruction K, and was therefore properly refused. There is no evidence in this case upon which to predicate such instructions.

Instruction M declared it to be the duty of the plaintiff on approaching the track to look and listen for the cars and directed the jury to find for the defendant, if the plaintiff failed to do so, and if the collision occurred because of such failure. The evidence is uncontradicted that the plaintiff did look and listen, and that the collision did not occur because of any failure to do so. Hence, this instruction was properly refused.

These are all the errors assigned. And as none of them have been found to be well taken, the judgment of the circuit court is affirmed. All concur.