## W. W. TAYLOR & SONS BRICK COMPANY, Appellant, v. KANSAS CITY SOUTHERN RAILWAY COMPANY.

### Division Two, July 14, 1908.

**THEORY OF TRIAL: Changed on Appeal: Fire From Engine.** Where plaintiff at the trial, both by his evidence and instructions, based his right to recover on the theory that the sparks and cinders which set fire to his factory were emitted from a train belonging to and being operated by defendant, and lost before the jury on that theory, he will not, in his motion for a new trial or on appeal, be permitted to shift his position and recover on the theory that defendant was liable whether the fire was emitted from one of its own engines or from engines of other companies who used its tracks.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover*, Judge.

AFFIRMED.

*I. N.. Watson* for appellant.

The court erred in instructing the jury to the effect that if the fire was set by an engine belonging to one of the other railroads, using defendant's tracks, plaintiff could not recover. Section 1111, Revised Statutes 1899, makes each company, owning or operating a railroad in this State, liable in damages to every person and corporation whose property may be injured or destroyed by fire, communicated directly or indirectly by locomotive engines in use upon the railroad owned or operated by such railroad corporation, etc. McFarland v. Railroad, 94 Mo. App. 336. This section does not limit the liability to fires set by the railroad's own engines, but the statute says the owner of the road shall be liable for any fire communicated directly or indirectly by locomotive engines in use upon the

railroad owned, etc. Hence defendant's instruction which tells the jury that if plaintiff's plant was set on fire by an engine of one of the other railroad companies shown by the evidence to be using those tracks, the plaintiff could not recover, was erroneous. Sec. 1060, R. S. 1899; Markey v. Railroad, 185 Mo. 348; Mathews v. Railroad, 121 Mo. 298; Dean v. Railroad, 199 Mo. 389; 2 Elliott on Railroads, sec. 477; McCoy v. Railroad, 36 Mo. App. 452; Driscoll v. Railroad, 32 Atl. 356; Noyes on Intercorp. Relations, 261; McFarland v. Railroad, 94 Mo. App. 336.

*Cyrus Crane* and *S. W. Sawyer* for respondent.

Defendant's instructions complained of merely confined plaintiff to the case which it presented by its pleadings, evidence, and instructions. Plaintiff chose its own theory and is now bound by that. Plaintiff's theory was shown to be the same in several ways and by each of these it is now bound. First, by its pleadings. Feary v. Railroad, 162 Mo. 96; Campbell v. Railroad, 175 Mo. 161; Glaser v. Rothschild, 106 Mo. App. 418; Hamilton v. Railroad, 100 S. W. 671; Kenney v. Railroad, 70 Mo. 255; Melvin v. Railroad, 89 Mo. 106. Second, by the evidence. No case was made against any other than a Kansas City Southern engine, and, hence, plaintiff's recovery was rightly limited to damage caused by such engine. Peffer v. Railroad, 98 Mo. App. 291. Third, by plaintiff's instructions. Pope v. Ramsey, 78 Mo. 163; Hackett v. Underwriters, 79 Mo. App. 19; Vining v. Ins. Co., 89 Mo. App. 319. Fourth, by plaintiff's conduct throughout the trial, the line of evidence offered, the examination and cross-examination of witnesses, and its whole attitude. Seymour v. Newman, 77 Mo. App. 584; Hilz v. Railroad, 101 Mo. 41; Jones v. Haberman, 94 Mo. App. 4.

FOX, P. J.—This cause is now pending in this court upon appeal on the part of the plaintiff from a judgment of the Jackson County Circuit Court in favor of the defendant. This is an action to recover damages for the destruction of a brick plant in Kansas City, Missouri, owned and operated by the plaintiff, which is alleged to have been caused by fire from one of defendant's engines, being run and operated over defendant's railroad tracks, which passed by and near the brick plant of the plaintiff.

The charge in the petition is "that on the 8th day of January, 1903, defendant carelessly, negligently, and wrongfully ran and operated an engine with a large train of cars thereto attached over its tracks aforesaid, in such a manner as to cause said engine to emit a large amount of sparks and cinders therefrom, and defendant carelessly, negligently, and wrongfully operated an engine with a defective smokestack, so that sparks and cinders escaped therefrom, and by means of such careless, negligent and wrongful acts aforesaid sparks and cinders were emitted from one of defendant's engines and were blown against and upon the engine house and boiler room aforesaid belonging to this plaintiff," etc. After the statement of plaintiff's loss the petition further charges "that by reason of all of the aforesaid careless, negligent and wrongful acts of the defendant, sparks and cinders were emitted from said engine and conveyed by the wind," etc. There was also embraced in the petition an itemized statement of the loss by reason of the fire, which in the aggregate amounted to $12,771.82. The answer of the defendant was a general denial.

We shall not undertake to give in detail all of the testimony developed at the trial. We have read in detail the entire disclosures of the record and find that there was testimony offered by the plaintiff tending to show that the plaintiff on January 8, 1903, was the

owner of a brick plant in Kansas City, located at First and Gillis streets. On the northwest corner of said plant was located the engine room, which was a frame structure, boarded upright, with small cracks between the boards. On the east of this engine room and adjoining thereto was the boiler room, and east of that were office rooms, and southeast of the engine room were sheds and kilns, and a large barn on the southwest corner of the brick plant. There was other testimony tending to show that the defendant owned and operated a double-track railway along the north side of plaintiff's brick plant, about fifteen feet distant from the engine room and boiler room, as heretofore stated; that coming west on said tracks there was a steep upgrade, and engines had hard work to pull nine or ten loaded cars up that grade. It was further shown that through some sort of an arrangement, the Frisco, St. Joe & Grand Island, Quincy, Omaha & Kansas City Railway Company, and the Independent Air Line were permitted to run engines and cars thereto attached over the tracks of the defendant in front of plaintiff's brick plant.

One of the witnesses for the plaintiff, Ed Trapp, testified that the fire which destroyed the brick plant, in his opinion, occurred between ten and eleven o'clock. He further stated that he saw a freight train pass over the defendant's track ten or fifteen minutes before the fire, and he says that after the passing of that freight train he does not think there was any other train that passed between that time and the fire. The freight train of which this witness testified was a freight train with one engine; he did not know how many cars were in the train; he says that he saw emitted from the engine smoke, sparks and cinders; he said that the cinders looked like they were of pretty good size; he also stated that the sparks were a good-size class of sparks. He stated that the engine of

the Kansas City Southern ran over the road. He was unable to tell the name of that engine he saw that morning as he paid no attention to that. Inquiry was made of Mr. Trapp as to his knowledge of other trains passing over the tracks of the defendant. His answer to that inquiry was that he knew nothing about the passing of other trains, and he said, ''I noticed the Kansas City Southern and I don't know of any other trains running over the tracks.''

Another witness testified for plaintiff, A. B. McBeth. This witness spoke of the different railroads that operated trains over the tracks of the defendant; he saw the fire consuming this brick plant on this morning, and while he says that frequently many trains would pass by this brick plant during the day, he says, referring to the morning of the fire, ''I can't say whether I saw any freight trains passing, except the Kansas City Southern.'' This witness further testified that he was unable to call to mind any freight train that morning except the Kansas City Southern.

John W. Taylor, a witness on the part of the plaintiff, testified substantially as follows:

''Q. Are you familiar with what trains run over that track, or did run over that track? A. I was at the time, yes, sir.

''Q. What trains ran over there?

''Mr. Crane: I understand you were in Iola when this occurred?

''The Witness: Yes, sir.

''Q. I mean generally prior to that? A. The Kansas City Southern seemed to have a regular time for transfers at about 10 to 10:15, from the east bottoms to the west bottoms.

''Q. What kind of a transfer was that? A. Freight.

''Q. What kind of a grade was that? A. Well,

it was a very steep grade and a curve at the same time.

"Q. Did you ever see any freight trains of any other road running over that line except the Kansas City Southern? A. The first three months I was there the Kansas City Southern did a little switching and then the Kansas City Suburban Belt, as it is called, did all their own switching on their line.

"Objected to by defendant as incompetent, irrelevant and immaterial.

"Q. Come down to the time the Kansas City Southern took charge of the line? A. There was no freight handled by any other road.

"Q. Their engines handled freight there? A. Yes, sir.

"Q. How long had that transfer been made there at that point about ten o'clock prior to that? A. Well, it seemed pretty regular for about a year before that.

"Q. How large a transfer would they usually bring up there coming west? A. Well, we didn't always count them; I don't remember that I ever counted them myself; I know they have taken some heavy trains.

"Q. A regular transfer of freight every day? A. Yes, sir."

Robert Campbell, a witness for plaintiff, was the engineer in charge of the engine and boiler room in the brick plant. He stated in substance that there was a train passed and that it was one of the usual trains; he said it was passing upgrade and seemed to be very heavily loaded, and it was necessarily puffing very freely, as usual on a long run. He stated that he was working with Mr. Heitman in the dry room and where they could hear the train and there was some remark made about this train, but the witness stated that he forgot what remark it was. He then stated that the

first fire he saw was about ten minutes after the train got by. He further testified as to the extent of the damages by reason of the burning of the plant.

There was testimony offered on the part of the defendant tending to show that the equipment of the freight train engines of defendant were of the most improved character, and in perfect condition, and by reason thereof could not have emitted sparks. There was other testimony tending to show that the fire originated in plaintiff's own engine house. In other words, there was a conflict of evidence between the plaintiff and the defendant as to whether or not this fire originated from sparks or cinders emitted from the engine operated by the defendant.

At the close of the evidence the following stipulation was filed in this cause: "By agreement of counsel it is stipulated that the jury may find simply for the plaintiff or defendant, without finding any amount, which is to be submitted to a referee."

At the request of the plaintiff the court gave instruction numbered 1, which was as follows:

"The court instructs the jury that if they find from the evidence in this case, that on January 8, 1903, plaintiff was the owner of the property described in the evidence, and that on said date said property was destroyed by fire communicated from an engine operated by defendant upon its road, in passing said place, provided you find said property was destroyed by a fire communicated from an engine operated by defendant upon its road, in passing the property of plaintiff in controversy, then you are instructed that defendant is liable to plaintiff for the reasonable value of the property destroyed, if any, and your verdict will be for the plaintiff, although you may believe there was no negligence in the management of the engine and train at the time of the fire."

213 Sup.—46

At the request of the defendant the court gave instructions numbered 1, 2 and 3, which are as fol-. lows:

"1.　You are instructed that in this case the plaintiff claims that the brick plant was set on fire by sparks or fire emitted from one of the engines of the Kansas City Southern Railway Company; therefore before you can find a verdict in favor of plaintiff, you must find that the fire was started in that way.　Even if you should believe that the fire was started from some locomotive, yet if it was not from one of the engines of the Kansas City Southern, plaintiff is not entitled to recover.

"2.　You are instructed that it is charged that the fire in this case was started from sparks of fire emitted from a locomotive engine belonging to the Kansas City Southern Railway Company.　Before, under any circumstances, the plaintiff is entitled to a verdict at your hands, you must find that the fire was actually so started.　If it was started in any other way, then the plaintiff is not entitled to recover, and your verdict should be for the defendant.

"3.　You are instructed that it is your duty to try this case and to decide it precisely as you would a case between two individuals.　The fact that the defendant is a railway company should make no difference whatever with the jury.　You should base your finding solely on the testimony of the witnesses, the facts and circumstances in evidence and the inferences to be drawn therefrom, without regard to who is plaintiff or who is defendant.　In arriving at your verdict, all of the instructions, though read to you by opposing counsel, should be considered together, for all of them are the court's instructions, and declare to you the law by which you are to be governed."

With the exception of other formal instructions as to the number of jurors who were authorized to

return a verdict and the form of the verdict, the instructions herein were the only ones given by the court.

The cause was submitted to the jury upon the evidence and the instructions of the court and they returned a verdict finding the issues for the defendant. A timely motion was filed by the plaintiff to set aside the verdict and praying that a new trial might be granted, which was by the court taken up and overruled. From the judgment of the trial court rendered upon the verdict returned by the jury the plaintiff in due time and proper form prosecuted its appeal to this court, and the record is now before us for consideration.

## OPINION.

The record in this cause presents but one proposition for our consideration, that is, whether or not the appellant, having tried this cause upon a certain theory, is in a position to ask for a reversal of this judgment predicated upon a theory which was never suggested during the progress of the trial.

We have carefully examined the disclosures of the record as to what occurred during the trial of this cause, and it is manifest from such record that this cause was tried by the plaintiff upon the theory that the fire which destroyed its brick plant emanated from sparks emitted from an engine attached to one of the freight trains of the defendant and at the time was being operated by the employees of the defendant upon its tracks which passed by the brick plant. That this is the theory is made manifest by the testimony introduced by the plaintiff, all of which is emphasized by asking but one instruction predicated upon the theory as herein suggested.

The only testimony offered by the plaintiff which reasonably points to the origin of the fire was that of witness Trapp. His testimony was that this fire oc-

curred between ten and eleven o'clock; that there was a freight train drawn by an engine passed by this plant over the tracks of the Kansas City Southern Railway Company; that he saw sparks and cinders emitted from such engine and very shortly thereafter the fire broke out in the brick plant of the plaintiff. While this witness was unable to tell the name inscribed upon the engine or the number of the engine, he did say that he noticed the Kansas City Southern and did not know of any other trains running over the tracks. Witness A. B. McBeth testified for the plaintiff that trains frequently passed by this brick plant during the day, but referring to the morning of this fire he said, "I cannot say whether I saw any freight trains passing except the Kansas City Southern;" and he further testified that he was unable to call to mind any freight train passing that morning except the Kansas City Southern. John W. Taylor, a witness for the plaintiff, while he was not there at the time of the fire, was familiar with the operation of the trains passing the brick plant of the plaintiff over the tracks of the defendant's railway, and he says that the Kansas City Southern seemed to have a regular time for transfer from about 10 to 10:15 from the east bottoms to the west bottoms. Upon inquiry as to what kind of a transfer it was, he answered that it was freight, and speaking of the time that the Kansas City Southern took charge of the line, he says there was no freight handled by any other road; and he further says that that transfer of freight by the Kansas City Southern was pretty regular about 10 o'clock, and had been pretty regular for about a year before the fire. He further stated that there was a regular transfer of freight every day by the Kansas City Southern. Witness Robert Campbell, who was the engineer in charge of the engine and boiler room in the plant of the plaintiff which was destroyed by fire, testifies about

a train passing upgrade puffing very freely, and stated
that it was one of the usual trains.   He further tes-
tified that the first fire he noticed was about ten min-
utes after this train passed.   His testimony is in keep-
ing with that of Taylor, who speaks of the regular
transfer of freight trains passing this plant about
10 or 10:15.   It is also in harmony with Trapp's testi-
mony that this was a freight train and passed between
10 and 11 o'clock, and shortly after the passing the
fire occurred in the brick plant.   There is an entire
absence of any testimony showing the emission of any
sparks or cinders, except the one drawing this freight
train that witness Trapp speaks about.   Taylor says
that no one except the Kansas City Southern was
handling freight and that they had a regular time for
such transfers, and the usual train referred to by wit-
ness Campbell evidently referred to the transfer of
freight as mentioned by witness Taylor.

But aside from the testimony as offered by the
plaintiff tending to show that the plaintiff relied upon
a recovery by reason of the showing that the fire em-
anated from an engine actually operated by the em-
ployees of the defendant, the Kansas City Southern,
we have such theory emphasized by the instruction re-
quested by the plaintiff.   This instruction told the jury
substantially that if they found that the plaintiff was
the owner of the property described in evidence and
that such property was destroyed by fire communicated
from an engine operated by defendant upon its road,
in passing said place, provided you find such property
was destroyed by a fire communicated from an engine
operated by defendant upon its road in passing the
property of plaintiff in controversy, then you are in-
structed that the defendant is liable.

We are of the opinion that this instruction settled
this proposition beyond all controversy.   That this
cause was submitted to the jury upon the theory on

the part of the plaintiff that if it was entitled to re-
cover at all, it was by reason of a fire being commun-
icated from an engine which was actually being operat-
ed by the defendant upon its tracks, which passed the
plaintiff's plant, there seems to be no room for doubt.
Now, while it may be true that under the provisions
of section 1060, Revised Statutes 1899, the defendant
could be held liable for damages occasioned by the
escape of fire from engines being operated by other
railroad companies, who were permitted to use the
tracks of the defendant, yet we take it that the plain-
tiff clearly indicated to the court, by the request of
this instruction, the grounds upon which it predicated
a right to recover, and we are unwilling to say that
the plaintiff can convict the court of error when it
simply followed the suggestions of the plaintiff and
confined the issues to those marked out by the plain-
tiff's instruction, and limiting the right to recover to
the issues thus made and pointed out by the plaintiff.
In other words, the plaintiff should not be permitted
to say to the court, "We asked a recovery upon the
theory that this fire originated from an engine actually
operated by the defendant, and procured from the
court, in accordance with such request, a declaration
of law upon that theory," with not even the slightest
suggestion that it predicates a right of recovery upon
any other theory, and then after an adverse finding
upon such issue, for the first time suggest in its motion
for a new trial that it had a right to recover upon
an entirely different theory.  Conceding for the pur-
poses of this case that the plaintiff under its petition
had a sufficient basis to offer testimony that the fire
which destroyed the plant of the plaintiff originated
from engines being used by other railroad companies
upon the tracks of the defendant, yet in our opinion,
it was incumbent upon the plaintiff to present such
theory to the trial court during the progress of the

trial, and by appropriate instructions at the close of the evidence.

That learned counsel for plaintiff, from the filing of the petition until the return of the verdict in this cause, never sought a recovery for the damages by reason of this fire upon any other theory than that the fire originated from one of the engines actually operated by defendant, in our opinion is too plain for discussion. If there was sufficient evidence that this fire originated from engines other than those operated by the defendant, however, upon defendant's tracks, then it was the plain duty of the plaintiff to request the court to submit that theory to the jury, and having failed to do so, but requesting a declaration of law which defined and limited its right of recovery to one single theory, then in our judgment, the plaintiff is in no position to urge that the court committed error in giving the instructions requested by the defendant, which were simply counter instructions limiting the right of recovery to the theory as suggested by the instruction given for the plaintiff.

The proposition confronting us upon this appeal is no longer an open one in this State. It has repeatedly been announced by this court that the case reviewed by the appellate court will be reviewed upon the theory adopted by the parties in the trial of the cause, and, as was said by this court in Hill v. Drug Co., 140 Mo. 1. c. 439, "It can now be announced as the fixed policy of our practice that parties litigant will be confined to the course of action they have adopted throughout the progress of the trial, even though that action be inconsistent with the course to have been pursued as indicated by the pleadings on file."

Again, it was said in Campbell v. Railroad, 175 Mo. 161: "Both parties tried the case on the theory that it was necessary for the plaintiffs to show that the defendant had agreed to be bound by the ordi-

nances of the city governing the running of street cars before it could be held liable for a violation of the same; therefore, whether that is a correct theory or not, neither party is in a position to question it in this case.''

The St. Louis Court of Appeals, in Glaser v. Rothschild, 106 Mo. App. 418, thus stated the rule upon this proposition: ''Appellant, in his brief on motion for rehearing, contends that, notwithstanding plaintiff was on the premises of respondent as a mere licensee when hurt, yet by virtue of section 6435, Revised Statutes 1899, it was the duty of respondent to surround the well-hole into which appellant fell, with strong guard rails. This statute was not relied on at the trial, but the cause was tried by the appellant on the theory that respondent was guilty of negligence as at common law; having tried the case on that theory, appellant cannot shift his position on appeal by calling to his aid a statute which he neither specifically pleaded nor relied on at the trial.''

In Hamilton v. Railroad, 123 Mo. App. 619, the Kansas City Court of Appeals had in hand a case in which plaintiff charged that he received a fall from the top of a car and claimed that it was caused by the defendant's negligence in furnishing a defective brake. The trial in the lower court proceeded upon that theory. The plaintiff failed of a recovery; however, afterwards it was urged that he had a cause of action under the Federal Safety Appliance Act. That court, in treating of that proposition, thus very clearly and correctly stated the law: ''It is a part of plaintiff's contention now that he has a case under an Act of Congress known as the 'Federal Safety Appliance Act.' He claims that though that statute was not, in terms, pleaded, and that though the petition was not drawn with a view to that act, yet, it sets forth facts which fairly put the case within that statute. It is enough

to say of this contention that no case was attempted to be made under that statute, that no issue was submitted to the jury in respect thereto, and, so far as the record shows, there was no thought, prior to or at the trial, of making a case under that statute. It is familiar practice that the appellate courts of this State refuse to permit the parties to try any other case on appeal than that heard and determined in the trial court.''

We see no necessity for pursuing this subject further. The doctrine is firmly settled by the appellate courts of this State that they will simply review the case upon the theory upon which it was tried in the lower court. Emphasizing how closely this court adheres to this rule, we direct attention to the case of Hilz v. Railroad, 101 Mo. 36. In that case it was urged in this court that an issue to which the evidence and instructions were directed was not in fact properly made an issue. The court in disposing of that complaint used this language: ''The cause having been so tried, both parties, by the evidence and instructions having treated the issue as properly made, both parties having asked its determination and submission to the jury, the objection that there was no such issue, we think, cannot now be made,'' citing Bettes v. Magoon, 85 Mo. 580; Thorpe v. Railroad, 89 Mo. 650; Loomis v. Railroad, 17 Mo. App. 340.

If the adjudications as heretofore indicated are to be longer recognized as correct rules for the guidance of the courts of this country, then we see no escape from the conclusion that the plaintiff in the trial court predicated its right of recovery upon the theory that the fire was set out by a Kansas City Southern engine, and that it would be manifestly erroneous, as well as unjust, to sustain plaintiff's contention that this cause should be reversed and a new trial granted for the reason that the cause might have been tried upon some

other theory in the lower court. There was no error in the instructions complained of given at the request of the defendant. As before stated, they were simply counter instructions to the one requested by the plaintiff, which was given, and confined and limited the recovery to the issue as pointed out by the plaintiff in its instruction. The plaintiff, by its instruction numbered 1, plainly marked out the theory upon which it sought a recovery as against this defendant, and by that theory it must stand or fall in this court.

We have given expression to our views upon the only proposition confronting us as disclosed by the record, which results in the conclusion that the judgment of the trial court should be affirmed, and it is so ordered.

All concur.