MORITZ, Appellant, v. ST. LOUIS TRANSIT COM-
PANY, Respondent.

### St. Louis Court of Appeals, November 17, 1903.

1   Appellate Practice: ABSTRACT OF RECORD: RECITALS.
Where the abstract of the record, filed in lieu of a full tran-
script, recites an entry of the filing of the bill of exceptions,
it is a sufficient compliance with the rule that the filing of the
bill must appear from the record *dehors* the bill.

2.  Street Railways: DUTY OF MOTORMAN. The vigilant-watch
ordinance of St. Louis, as well as the common law, makes it the
duty of the motorman to begin to acquire control of his car as
soon as he sees there is danger of an accident.

3.  ————: NEGLIGENCE: PROXIMATE CAUSE OF INJURY. In an
action for damages caused by collision with a street car, where the
evidence shows that the plaintiff's wagon was started across
the track while the approaching car was 500 feet away, and
that the view was unobstructed, it is a question for the jury as
to whether the motorman could have avoided the injury and
whether the defendant was guilty of negligence which proxi-
mately caused it.

Appeal from St. Louis City Circuit Court.—*Hon. J. A.
McDonald,* Judge.

REVERSED AND REMANDED.

*Boyle, Priest & Lehmann, George W. Easley* and
*Edward T. Miller* for respondent.

(1)   The abstract filed by appellant does not show
that any bill of exceptions was filed in the court below
by order of the court entered of record.   Reno v. Fitz
Jarrell, 163 Mo. 411; Roush v. Cunningham, 163 Mo.
173; State v. Baty, 166 Mo. 561; Wilson v. Railroad, 167

Mo. 323; Jordan v. Railroad, supra; Allen v. Funk, 85 Mo. App. 460; Burdick v. Life Ass'n, 86 Mo. App. 94; Bates v. Railroad, 88 Mo. App. 550; Hayden v. Alkire Grocer Co., 88 Mo. App. 241; Shoe Company v. Williams, 91 Mo. App. 511; Lucas v. Huff, 92 Mo. App. 369; Hughes v. Henderson, 95 Mo. App. 312. (2) There is nothing in the abstract filed by appellant to identify as a bill of exceptions, or, as any portion of a bill of exceptions, any of the matter contained in said abstract. If a bill of exceptions is concealed within the covers of the appellant's abstract, there is nothing by which to determine where it begins or where it ends, and no portion that can, therefore, be treated as part of the record. (3) The only thing to show the filing of a motion to set aside the involuntary nonsuit and to grant appellant a new trial, that it was overruled, and that, to such action, exception was taken, is the recital in the unsigned, unidentified and unfiled statement made in the abstract bearing some of the symptoms of a bill of exceptions. This is insufficient. Such matters must be shown by order of record. McCormick & Co. v. Crawford, 72 S. W. 492; Head v. Randolph, 83 Mo. App. 284; Burdick v. Life Ass'n, supra; Johnson v. Carrington, 120 Mo. 315; Storage Co. v. Glasner, 150 Mo. 426; Butler County v. Graddy, 152 Mo. 411.

*M. Hartmann, Walther & Muench* and *Louis Mayer* for appellant.

(1) Plaintiff's evidence made out a prima facie case, and the court erred in giving the peremptory instruction asked for by defendant at the close of plaintiff's testimony. Cooney v. Railroad, 80 Mo. App. 226; Klockenbrink v. Railroad, 81 Mo. App. 351; McAndrews v. Railroad, 83 Mo. App. 233; Murphy v. St. Louis Transit Co., 95 Mo. App. 728; Guenther v. Railroad, 108 Mo. 18; Reardon v. Railroad, 114 Mo. 384; Sinclair v. Railroad, 113 Mo. 233; Morgan v. Railroad, 159 Mo. 262; Meyers

v. St. Louis Transit Co., 73 S. W. 379; Schafstette v. Railroad, 74 S. W. 826. (2) Under the humane doctrine, the case should have been submitted to the jury. Schmidt v. Railroad, 50 S. W. 921; Klockenbrink v. Railroad, supra; Cooney v. Railroad, supra; Hutchinson v. Railroad, 88 Mo. App. 376.

GOODE, J.—Action to recover for injuries to a team of horses, harness and wagon due to colliding with an electric car belonging to the defendant and operated by its servants. The accident happened on Twelfth street in the city of St. Louis between Chouteau avenue and Gratiot street. The distance between those two streets is stated in the testimony to be about fifteen hundred feet. This block was at one time bisected by Papin street, but that street had been closed and no longer crossed Twelfth when the accident happened. The Shickle & Harrison Foundry Company's yards and office building are situate on the west side of Twelfth street about midway of the block. John E. Luley was driving the team when the collision occurred. He had loaded a boiler on a float-wagon at Third and Clark streets to take it to the Shickle & Harrison Foundry. The load and wagon were heavy and were moved slowly. At Chouteau avenue Luley entered Twelfth street and drove north on the east side near the curbing until he came to an alley just south of the office building of the foundry company, when he paused to turn diagonally across the street to the yard. A north-bound car running on the east track, and also a south bound car on the west track had just passed the wagon. Immediately after they passed, Luley started across the tracks on a northwest curve toward the gate of the foundry yard. This diagram shows the situation:

As he turned to the west, the car which hit the team was coming down the bridge approach near Gratiot street, five hundred feet or more away. The team crossed the east track and had just stepped on the west one when the car struck the wagon pole and the off-horse, doing damage. No gong was sounded or warning given by the motorman. The car ran nearly to Chouteau avenue after striking the wagon. The collision occurred directly in front of the gate of the foundry yards. All the evidence tends to show the car was running at the high speed of eighteen or twenty miles an hour.

The foregoing statement of the case is made up from the testimony given by the plaintiff and corroborative witnesses, there being no material discrepancy which has attracted our attention in the several narratives of the occurrence related by the persons who saw it.

One act of negligence counted on in the petition is a violation of the ordinance of the city of St. Louis, which requires street-car crews to keep vigilant watch for vehicles or persons on foot on the car track or moving toward it, and to stop their car in the shortest time and space possible on the first appearance of danger to the vehicle or person. It is averred that the motorman in charge of the car which hit the wagon failed to keep vigilant watch and stop the car in the shortest time and space possible on the first appearance of danger to the plaintiff's vehicle. Another act of negligence pleaded is that the defendant was bound, by the ordinance under which it occupied the street, to keep the speed of its cars within ten miles an hour; but that in disregard of the ordinance this car was running in excess of that rate. Still another specification is that the motorman failed to give warning of the approach of the car by sounding the bell, or otherwise.

At the conclusion of the testimony on behalf of the plaintiff, the court granted an instruction in the nature of a demurrer to it, forcing plaintiff to take a nonsuit,

from which, after vainly moving to have it set aside, he appealed.

1. The sufficiency of plaintiff's abstract of the record is attacked on the ground that it nowhere shows a bill of exceptions was filed in the court below, or the filing of a motion to set aside the nonsuit and for a new trial, or the overruling of such motion and an exception by the plaintiff. The abstract recites the filing of a motion of that kind on the nineteenth day of June, 1903, and within four days after the nonsuit was taken. Said motion is printed in full and following it appears a recital that on the twenty-second day of July, at the same term of court, it was overruled and the plaintiff then and there excepted to that action of the trial court. The abstract further recites that on the 23d day of July plaintiff filed an affidavit for appeal, which was granted and thirty days given for filing bill of exceptions. The last date, to-wit, July 23d, is a misprint; for by turning to the transcript, we found the appeal was taken and time allowed to file bill of exceptions on July 28th, instead of the 23d. The abstract further recites that on August 27th, and within thirty days, an order was made and entered of record granting plaintiff thirty days additional to file his bill of exceptions. As the previous order was entered on the 28th instead of the 23d, the extension was made within its currency and was effective. The abstract further recites that in order to carry the rulings and exceptions previously recited into the record, plaintiff tendered his bill of exceptions to the court, that it was signed and sealed September 24, 1903, during said June term of the circuit court by the judge of said court, was filed on said last named date, marked filed by the clerk of the court, and duly entered of record. We can detect no flaw or imperfection in the foregoing statement of the contents of the abstract which would deprive this court of the right to review the plaintiff's exceptions. In truth, it appears from the recitals that the bill of exceptions was filed during the

term at which the cause was tried and judgment rendered. The cases cited by the defendant support the rule that the filing of a bill of exceptions can not be proven by the bill itself, but must appear from the record dehors the bill. Reno v. Fitz Jarrell, 163 Mo. 411. But this rule is not violated in the present case, since the abstract of record recites an entry of the filing of the bill. McDonald v. Hoover, 142 Mo. 484; Jordan v. Railway Co., 92 Mo. App. 81. We find, too, apt recitals of entries of the filing and overruling of the motion for new trial and of plaintiff's exception.

The abstract is further criticised for setting out fragments of the evidence instead of the whole of it, thereby precluding this court from reviewing the action of the trial court in sustaining the demurrer to the evidence; but it appears to present the testimony of the witnesses in full; hence, is proof against this criticism.

2. The witnesses agree that the motorman made no effort to stop the car until the instant of the collision, although, according to their testimony, he must have observed the approach of the team toward the track on which the car was running when he was more than five hundred feet away and that the driver intended to cross that track. This was certainly evidence to go to the jury in support of plaintiff's case. Granting that the driver was negligent in proceeding when he saw or might have seen the car (which, however, was an issue of fact, according to the reasoning in the Schaffstette case, infra), it was for the jury to say whether by prompt and active measures the motorman could have checked the car in time to prevent a collision. The distance between the car and the wagon was great enough to support the inference that the former could have been stopped by proper effort before harm was done; but the testimony is uniform that no effort was made to stop it.

The case of Schaffstette v. Railway Co., 175 Mo. 142, 74 S. W. 826, is in point. In that case the distance

between the colliding car and the vehicle, when the latter drove on the track and started along it, was five hundred feet. Commenting on that fact the Supreme Court, by Judge MARSHALL, said.

"It is not true as a matter of law, and prima facie can not be true as a matter of fact, that it is negligence for a citizen to cross or drive upon or along a street car track when a street car is five hundred feet away, although it may be coming in the same direction, and running at a speed of five, ten, or even more miles an hour, when the track is straight and the operative of the car can easily and plainly see that such person is in such position. In such case, particularly where the citizen turns onto the track and drives upon or close to it, with his back to the approaching car, it is the duty of the operative to check the car and avoid the accident, and if a collision occurs it is prima facie, if not altogether, owing to the negligence of the operative of the car."

That reasoning applies to the present case in which the team and wagon must have been within the motorman's gaze, if he was looking, and the intention of the driver to cross the track apparent. A driver or pedestrian can hardly find a better chance to cross car tracks in safety than when the nearest car is five hundred feet from him. On some streets of St. Louis there is nearly always a car that close during some hours of the day. The evidence is that the driver tried to turn his team back to the east as soon as he noticed the car, but was unable to turn soon enough to escape a collision. He did all he could to avoid an accident, so far as appears, after he saw the car.

The facts before us are very like those in Cooney v. Railway Co., 80 Mo. App. 226, in which the plaintiff was hurt by a car while driving diagonally across a car track, his movements having been under the observation of the motorman for quite a distance.

The ordinance in question, as well as the common law, made it the duty of the motorman to begin to ac-

Moritz v. St. Louis Transit Co.

quire control of his car as soon as he saw there was danger of an accident; and the testimony was compatible with the conclusion that such danger was visible when he was five hundred feet away; for at that time the team was already crossing the east track and headed toward the west one.

In Aldrich v. Transit Co., 101 Mo. App. 77, 74 S. W. 141, we said: "The behavior of a person may clearly signify before he goes on the track that he will go on it in unconsciousness of impending danger, and it then becomes the duty of a motorman or engineer to obtain control of his car or engine before it is too late to avoid striking the person, if possible."

If the statements of the witnesses who testified were true, and we must accept them in reviewing the ruling on the demurrer, no step was taken to check the car until just as it struck the wagon; which argues either inattention on the part of the motorman, or indifference. Of course, if the team obtruded into his view too late for him to stop before hitting it, the case is different. But no witness made that inference necessary; since they all swore the car was distant five hundred feet or further, when the wagon started across the track and that there was nothing between the two vehicles to obstruct the gaze. There was testimony also that some distance from the point of collision the grade begins to rise from a point to which it previously descends. On the evidence we must hold that an issue arose for the determination of the jury as to whether the defendant was guilty of negligence which proximately caused the accident.

The judgment is reversed and the cause remanded. *Bland, P. J.,* and *Reyburn, J.,* concur.