LINDER, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

**St. Louis Court of Appeals, December 15, 1903.**

1. **STREET RAILWAY COMPANIES: Negligence: Reciprocal Rights.** The use of streets in a city by the public, whether in vehicles or on foot or by the operation of electric cars, is concurrent, and the rights of private vehicles and electric cars thereon are equal and each mode of conveyance must be operated with a reasonable regard for the safety of the other.

2. ———: ———: **Crossing Track in Front of Approaching Car: Jury Question.** Whether it was negligence in a person, in day light, to drive about 25 feet in order to cross the track in full view of the motorman upon an approaching car about 200 feet distant, although at a rapid rate of speed, was a question for the jury.

3. ———: ———: ———: **Last Chance.** And where a person was injured by crossing in such a manner, if the motorman saw, or by the exercise of ordinary care, could have seen his peril, even though due in a measure to his own negligence, in time to have avoided the accident, the street railway company is liable for the injury.

4. **INSTRUCTIONS: Ordinary Care: Definition.** Where the court in an instruction, defined ordinary care to be "such care as a person of ordinary prudence and caution would exercise in the same situation, and under like circumstances," and added: "And the failure to exercise such care is negligence in the sense in which that term is used in these instructions," it was not error; the instruction was not impaired by uniting the legal definition of negligence with that of ordinary care.

Appeal from St. Louis Circuit Court.—*Hon. D. D. Fisher,* Judge.

AFFIRMED.

*Boyle, Priest & Lehmann, George W. Easley,* and *Edward T. Miller* for appellant.

(1) The demurrer to plaintiff's evidence should have been sustained. Plaintiff admits that, having seen the car approaching less than a block away, he got into the buggy, after putting some books into it that he had purchased, and, taking the lines, leisurely drove in a northwesterly direction to and across the east-bound track and upon the track where he was struck, without again looking toward the car that he knew was but a short distance from him. Such negligence on his part should preclude a recovery. Boyd v. Railroad, 105 Mo. 371; Maxey v. Railroad, 113 Mo. 1; Lane v. Railroad, 132 Mo. 4; Watson v. Railroad, 133 Mo. 246; Huggart v. Railroad, 134 Mo. 673; Peterson v. Railroad, 156 Mo. 552; Holwerson v. Railroad, 157 Mo. 216; Tanner v. Railroad, 161 Mo. 497; Hook v. Railroad, 162 Mo. 569; Weller v. Railroad, 164 Mo. 80; Lien v. Railroad, 79 Mo. App. 475; Conrad Gro. Co. v. Railroad, 89 Mo. App. 534; Cogan v. Railroad, 73 S. W. 738; Nellis on Str. Surf. Railroad, pp. 362-5-6-7. The demurrer should have been sustained for another reason: Plaintiff saw the car and had the same opportunity for observing its speed as had the witnesses who testified as to such speed. If the car was running at a "high and dangerous" rate of speed, as stated by plaintiff and his witness, Frankel, he had no right to rely and act upon any obligation of the defendant to run the car at a lower rate of speed. It is only in the absence of information to the contrary that he had the right to rely upon the presumption that defendant would perform its duty and observe the precautions imposed on it. Bannock v. Ellmore, 114 Mo. 65; Weller v. Railroad, 120 Mo. 653; Lynch v. Railroad, 112 Mo. 436; O'Connor v. Railroad, 94 Mo. 150; Kellney v. Railroad, 101 Mo. 77; Sullivan v. Railroad, 117 Mo. 222; Hutchinson v. Railroad, 161 Mo. 257. (2) The court erred in giving plaintiff's instruction number 1. Stating the in-

struction in another form, yet retaining all its constituent elements, it reads as follows: "If before attempting to cross the track the plaintiff looked and saw the car approaching at a high and dangerous rate of speed, then plaintiff had a right to attempt to cross the track in front of it, provided he could have crossed if the car had been going at a reasonable rate of speed, and your verdict must be for the plaintiff." In other words, while it was the duty of the plaintiff to look and listen before attempting to cross the track, yet, having done that, he discharged his duty and was under no obligation to heed what he saw or heard.    Our contention that the instruction does not properly state the law is supported by the following authorities: McManamee v. Railroad, 135 Mo. 440; McCarty v. Hotel Co., 144 Mo. 402; Kreis v. Railroad, 148 Mo. 321; Graney v. Railroad, 157 Mo. 666; Ledwidge v. St. Louis Transit Co., 73 S. W. 1008.    The instruction is in direct conflict, and can not be reconciled with defendant's given instructions Nos. 1, 2, 4, and 5, which have repeatedly received the sanction of the appellate courts of this State.    Zimmermann v. Railroad, 71 Mo. 476; Butts v. Railroad, 98 Mo. 272; Sullivan v. Railroad, 117 Mo. 214; Hayden v. Railroad, 124 Mo. 566; Kelsay v. Railroad, 129 Mo. 372; Culberson v. Railroad, 140 Mo. 63; Guiney v. Railroad, 167 Mo. 595; Hickman v. Railroad, 47 Mo. App. 65; Smith v. Railroad, 52 Mo. App. 36; Sonnenfeld v. Railroad, 59 Mo. App. 668.    No city ordinance regulating the speed of the car having been introduced, and there being no statute confining its speed within certain limits, it was necessary that there should be evidence showing that the speed at which the car was running was "high and dangerous."    There being no such evidence offered, the instruction is erroneous for that reason.    Maher v. Railroad, 64 Mo. 267; Powell v. Railroad, 75 Mo. 80; Young v. Railroad, 79 Mo. 336; Dairy Co. v. St. Louis Transit Co., 71 S. W. 726.    Defendant's duty to attempt to stop the car only began when plaintiff was in a "position of

peril,'' and his position was not perilous until the moment he actually got upon the track. The instruction given violates the established principle of law. Jackson v. Railroad, 157 Mo. 621; Railroad v. Houston, 95 U. S. 697; Railroad v. Jacobs, 63 Ill. 178; Railroad v. Stone, 41 Ind. 149; Beach, Cont. Neg. (2 Ed.), sec. 188, note 5. (3) The only theory upon which plaintiff can seek to justify a submission of his case to the jury is found in instruction No. 1, given of the court's own motion, which declares that if the motorman saw plaintiff on, or passing on, the track in time to have stopped the car, etc., and failed to do so, then the plaintiff is entitled to recover, notwithstanding his negligence in going on the track. This instruction should not have been given for several reasons: First. The instruction ignores the doctrine of mutual and concurring negligence. Nelson v. Railroad, 68 Mo. 597; Price v. Railroad, 72 Mo. 114; Murphy v. Railroad, 153 Mo. 253. Second. No negligence after becoming aware of the plaintiff's danger was alleged in the complaint. It must be both alleged and proven. Moore v. Lindell Ry. Co., 75 S. W. 676; Hite v. Railroad, 130 Mo. 132; Bartley v. Railroad, 148 Mo. 124; Chitty v. Railroad, 148 Mo. 75; Fuchs v. St. Louis 161 Mo. 620; Feary v. Railroad, 162 Mo. 96; Jacquin v. Railroad, 57 Mo. App. 320; Elliott v. Am. Mnfg. Co., 71 Mo. App. 170; Pryor v. Railroad, 85 Mo. App. 367. Third. There is no evidence that the car could have been stopped after plaintiff came upon the track. Zurfluh v. Railroad, 46 Mo. App. 626; Molyneux v. Railroad, 81 Mo. App. 25.

*P. P. Mason* for respondent.

REYBURN, J.—This action for personal injuries was begun before a justice of the peace of the city of St. Louis, tried anew in the circuit court, and from judgment for plaintiff defendant has appealed.

About five o'clock in the afternoon of October 1, 1900, plaintiff, a physician, residing in East St. Louis, was in a bookstore on the south side of Pine street between Seventh and Eighth streets; an alley extends southwardly from Pine street between the streets named, and the store in question was a door or two west of the alley. Plaintiff emerged from the bookstore, deposited the books he had purchased in his buggy, which was in front of the store, turned toward the west with the horse not hitched. As he came out of the store he saw an east-bound car passing his vehicle, and before getting into the buggy he looked and observed further eastward, a west-bound car approaching Seventh street. After placing the books in his vehicle, he entered it and started the horse, with the intention of crossing to the north side of Pine street and proceeding eastwardly; he passed the south track in safety and was partially across the north track, when the west-bound car he had observed struck about the center of the rear wheel of the buggy, overturning it, and plaintiff holding to the reins, was dragged a distance, variously estimated by different witnesses, before both conveyances were stopped.

There was no proof of the distance between Seventh and Eighth streets, nor of the exact width of Pine street; but appellant in argument insists that the block lying between the first named thoroughfares was an ordinary city block about 300 feet in length, and plaintiff estimated that his buggy had moved 20 feet from where it had been to the point of collision. The negligence averred in the complaint was the defendant's agents and servants in charge of the colliding car propelled same at a greater rate of speed than allowed by law, and the ordinances of the city, and without giving notice of its approach to persons in front of said car by ringing the bell or gong, or attempting to check the speed.

1. It is urged that the imperative instruction asked at the conclusion of the testimony on behalf of the plaintiff should have been given, as the plaintiff's own testi-

mony showed he was guilty of such contributory negligence as barred his recovery. Accepting, as we are bound to do, the plaintiff's statement for the purpose of considering this instruction, the colliding car was about 200 feet away, if east of Seventh street, when he entered his vehicle, and he had traversed about twenty feet, when the accident occurred by the rapid approach of the car and the neglect of its motorman to check its excessive speed. The court, in effect, is asked to declare that to attempt to move a buggy about 25 feet on a public highway, but across two street car tracks, on the more distant one of which a car was seen drawing near about 200 feet distant, imputes such contributory negligence to the driver as to preclude recovery by him if the car strikes his vehicle. Extended to its logical length, it follows from defendant's contention that it was the legal duty of plaintiff to have yielded the right of way to, and permitted the car to pass, and that a car at a distance of 200 feet is not sufficiently far away to permit crossing before it, even in a vehicle, safely and without being chargeable with negligence. As has been frequently adjudged, the use of the streets in a city by the public, whether in vehicles or on foot, and for the operation of electric cars, is concurrent and the rights of the private vehicle and of the electric car thereon are equal, and each mode of conveyance must be driven and operated by those respectively in charge to avoid injury and with reasonable regard for the safety of the other. The reciprocal rights and duties of the citizens and of those in charge of street cars, in the common use of public streets has been clearly and forcibly defined in recent expressions of the Supreme Court of this State:

"This duty is just the same as between street cars and a citizen as it is between any two citizens when using a street. The travelling public has no right to demand such rapid transit on streets of a city as to amount to negligence in the running of the car. The citizen who is

not in such a hurry but is exercising ordinary care while upon the street, has rights that are just as sacred in the eye of the law as those of the hurrying crowds who demand such rapid transit, and if a street car company heeds the demands of the latter class, and thereby negligently injures the former it must stand the consequences." Schafstette v. Railroad, 74 S. W. 826.

And in an earlier case approved in the last quoted decision:

"The sum of the adjudicated cases bearing upon the relative rights and duties of street cars and citizens travelling in vehicles drawn by horses or other animals is, that both have a right to use the street, but that neither has an exclusive right. The operator of a street car is not necessarily obliged to stop the car every time a horse shies or scares at the approaching car, but when the operator of the car sees that a horse is frightened at the car, it is his duty to manage his car in such manner as a man of ordinary prudence would do under the same circumstances, and it is always a question of fact for the jury whether such care in the running of the car has been observed. This duty may or may not lead to the necessity for bringing the car to a full stop. The duty of the company in this regard is just the same as the duty of one individual or citizen to another when they meet on the highway and the horse of the one becomes frightened at the vehicle of the other, or at anything upon the vehicle of another. Because a street car carries more people than any other kind of a conveyance, or because it is authorized to run more rapidly than a vehicle ordinarily can be legally driven or because the rush and restlessness of the age make unreasonable demands for more and more rapid transit along the crowded thoroughfares of populous cities, it does not follow that a street car can be run in disregard of the rights of persons travelling by other means, nor that a street car company is exempt from the common-law duty of every one to exercise ordinary care, nor that it is only liable

where the agents act wantonly, maliciously and heedlessly:'' Oates v. Railroad, 168 Mo. 535.

If defendant's motorman saw, or by the exercise of ordinary care, could have seen the peril of plaintiff, even though due in a measure to his own negligence, in time to have avoided the accident, plaintiff was entitled to recover. In any aspect of this case, it was for the jury and not for the court to say whether it was negligence in a citizen in daylight to drive about 25 feet to cross in full view of the motorman, a street car track upon which a car was moving in his direction, but about 200 feet distant, although at a rapid rate of speed. Both the plaintiff and the motorman of defendant's car were bound to the exercise of due care to avoid the collision, and, as a general rule, which party to such a catastrophe was in fault, is a practical question properly to be relegated to the jury for determination.

2. The charge to the jury was made up of three instructions for the plaintiff, four given by the court of its own motion, and six at the instance of defendant; the only instruction refused, other than the demurrer to plaintiff's evidence, which defendant presses should have been given, being the definition of ordinary care asked in the language following: ''By ordinary care as used in these instructions, is meant such care as persons of ordinary prudence and caution would exercise in the same situation, and under like circumstances'' which the court modified by adding thereto: ''And the failure to exercise such care is negligence in the sense in which that term is used in these instructions.'' The legal definition of negligence thus united to that of ordinary care in the form submitted by defendant, did not impair the instruction, nor prejudice defendant in anywise; and the appellant's strictures of other instructions, we feel, do not necessitate discussion. The instructions presented in clear and comprehensive manner the opposing theories of the respective parties, and the finding of the jury thereunder will not be disturbed.

Judgment affirmed. *Bland, P. J.,* and *Goode, J.,* concur.