JOHN HAMM, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

St. Louis Court of Appeals. Argued and Submitted May 5, 1914.
Opinion Filed June 2, 1914.

1. STREET RAILWAYS: Injury to Person in Vehicle: Contributory Negligence. In an action for injuries sustained in a collision between a street car and a buggy, evidence *held* to show that plaintiff was negligent as a matter of law, precluding a recovery by him, in driving his horse into a place of danger and at such a rate of speed as prevented him from averting the collision, after he saw, or by the exercise of proper care could have seen, that a collision was imminent, and in knowingly assuming the risk of getting across the track in safety, after he saw the approaching car.

*Held*, by ALLEN, J., dissenting, that the evidence did not show that plaintiff was driving so rapidly that, from the time he saw the car approaching, he could not have stopped his horse before driving upon the track; *held, further*, that, in view of the evidence tending to show that plaintiff looked and saw the car at such a distance from him that, if it had been traveling at a lawful rate of speed, as he assumed it was, he could have crossed the track in safety, he was not guilty of contributory negligence as a matter of law in failing to look again before crossing the track, or on the theory that he knowingly assumed the risk of getting across the track in safety.

2. ———: ———: ———. A violation by a street railway company of a municipal ordinance or a statute is ordinarily negligence, but such violation does not relieve a traveler from the duty imposed upon him by law, and a driver of a horse who approaches a street railway track or other dangerous spot recklessly or heedlessly is guilty of contributory negligence as a matter of law.

3. ———: ———: Last Chance Doctrine. A person injured by being struck by a street car cannot recover under the last

chance doctrine if he entered the danger zone too late for the motorman to save him by taking measures necessary to that end.

4. ———: ———: ———. In an action for injuries sustained in a collision between a street car and a buggy, evidence *held* to show that the motorman could not have averted injury to plaintiff, by taking necessary measures to that end, after he drove into the danger zone, and hence he was not entitled to recover under the last chance doctrine.

> *Held*, by ALLEN, J., dissenting, that the evidence tended to establish that the motorman could have stopped the car in time to have averted the collision, or, at least, by checking its speed and giving warning to plaintiff, could have averted the injury, and hence plaintiff was entitled to have the case submitted to the jury under the last chance doctrine.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

REVERSED. CAUSE CERTIFIED TO SUPREME COURT.

*G. T. Priest* for appellant.

Defendant's demurrer to the evidence should have been sustained for the following reasons: First, Because it shows that plaintiff failed to exercise ordinary care in looking and listening for the street car, under the circumstances; Second, Because he drove his horse in a place of danger and at such a rate of speed as prevented him from averting an accident, after he saw or could have seen that one was imminent; Third, Because he knowingly assumed the risk of getting across the track in safety, under the circumstances, and having assumed the risk he invited the consequences. Paul v. Railroad, 152 Mo. App. 577; Dey v. Railroad, 140 Mo. App. 461; Schwab v. Railroad, 133 Mo. App. 444; Mockowitz v. Railroad, 196 Mo. 550.

*Johnson, Rutledge & Lashly* for respondent.

The lower court did not err in submitting this cause to the jury—Because under the testimony the

Hamm v. United Railways.

question as to whether plaintiff was or was not guilty of negligence was a question for the jury. Schafstette v. Railroad, 175 Mo. 142; Linder v. St. Louis Transit Co., 103 Mo. App. 574; Hall v. Railroad, 124 Mo. App. 661; Freymark v. Transit Co., 111 Mo. App. 208; Moritz v. St. Louis Transit Co., 102 Mo. App. 657; Peterson v. Transit Co., 114 Mo. App. 374; Heintz v. St. Louis Transit Co., 115 Mo. App. 667; Strauchon v. Railroad, 232 Mo. 587; Krehmeyer v. Transit Co., 220 Mo. 639. Because, even if the testimony had shown that plaintiff was guilty of negligence as a matter of law, he was entitled to go to the jury under the humanitarian doctrine.

REYNOLDS, P. J.—Plaintiff, injured in his person and property by being run into by a street car on a line operated by the United Railways Company, brought his action for damages.

The negligence charged is excessive speed, in violation of what is known as the "speed ordinance" of the city of St. Louis, which limits the speed in the district in which the accident occurred to ten miles per hour, and the violation of another ordinance of the city, known as the "vigilant watch" ordinance, it being charged under this latter assignment that defendant's employees in charge of the car had failed to stop the car in the shortest time and space possible upon the first appearance of danger to plaintiff, and were negligent in failing to use ordinary care to stop the car after they saw plaintiff in a position of danger, and after those employees could, by the exercise of ordinary care and vigilance, have seen that plaintiff was in a position of danger and was liable to be struck by the car. Setting out the injuries sustained to his person and to his buggy, and the expenditures he had been put to, plaintiff demanded judgment in the sum of $7500.

The answer, after a general denial, pleaded contributory negligence on the part of defendant.

At the conclusion of the testimony for plaintiff, defendant interposed a demurrer to the evidence and that being overruled, introducing no evidence, defendant stood upon its demurrer. There was a verdict for plaintiff in the sum of $4232, judgment following. From this defendant has duly perfected its appeal to this court, having interposed a motion for a new trial and saved exception to that being overruled.

On careful consideration of the evidence in this case, we have concluded that the demurrer to the evidence should have been sustained.

Plaintiff, in support of his case, introducing the ordinances of the city referred to, produced two eyewitnesses to the accident, and these, in addition to himself, are the only witnesses testifying to that, the other witnesses testifying as to the locality, measurements of the streets, etc., and the extent of the injuries and damages sustained by plaintiff. Learned counsel for appellant have summarized the testimony so succinctly that we accept it, making a few additions.

The accident occurred in the city of St. Louis, at the intersection of Twentieth street and Washington avenue. Plaintiff was driving south on Twentieth, which at this point has considerable incline from the north toward Washington avenue, in a one-horse buggy, between 10 and 10:30 o'clock in the night. The night was clear and the street well lighted at this point. There is a building on the northeast corner of Washington and Twentieth, extending to the building line and obstructing any view to the east along Washington avenue until that building line is passed. As plaintiff, driving south on Twentieth street, attempted to pass over the tracks of the defendant company along Washington avenue, his horse and buggy were struck by a westbound car operated by defendant and run-

ning on the north track, and he was thrown to the ground.

A witness, Mr. Robinson (not Mr. Mengis, as mistakenly stated by counsel), testifying in behalf of plaintiff, said that he saw plaintiff "just as his horse was just north of the westbound track." The horse was apparently standing still. He saw plaintiff endeavor to urge the horse over by slapping him on the back with the reins. The car at that time was eighty feet east of the point of collision, going at the rate of twenty or twenty-five miles an hour, and struck the buggy somewhere near the rear wheels.

Another witness, Mr. Albright, also called by plaintiff, testified that he was standing on the front platform of the car which struck plaintiff. He first saw plaintiff emerging from the building line at Twentieth street when the car was at Nineteenth street, Nineteenth street being the next street east of Twentieth, and there being considerable fall from Nineteenth to Twentieth. When the car was three-fourths of a block or approximately 300 feet from the point of contact, the horse's head was just two feet north of the westbound, or north, track. When he again saw the horse and buggy, the front wheels were about on the track and the car was then eighty feet away from the point of contact. This witness further testified that the motorman did nothing to arrest the progress of the car until about at the point of contact when the fuse blew out and the car skidded westward along the rails.

These were the only eyewitnesses testifying to the accident, apart from plaintiff himself.

As a witness in his own behalf, plaintiff testified that he was driving south on Twentieth street, toward Washington avenue, late in the evening, going to Union Station, which is south of Washington avenue. His horse was going in a jog trot, going, as he said, "about seven or eight miles per hour." As he approached

Washington avenue he looked east and saw the car
was at Nineteenth street, coming toward Twentieth
street. He paid no more attention to the car, think-
ing that he had sufficient time to cross in safety, but
kept on driving toward the track. When he next looked
at the car, and before entering upon the track, he saw
that the car was right upon him, coming at a high
rate of speed. He tried to stop his horse but was un-
able to do so and to extricate himself from peril at-
tempted to urge the horse across in front of the car.
The car, however, struck his buggy, threw him to the
street and caused him to sustain various injuries to
his person, which, it appears were of a serious char-
acter. His buggy was also damaged.

A witness for plaintiff testified that a car going
twenty miles an hour could be stopped in from fifty
to seventy-five feet; going thirty miles an hour in 100
feet.

Such, in substance, is the statement of counsel for
appellant, and as said, we find it substantially accu-
rate. We may add from our own reading of the evi-
dence that it appeared from the testimony of a civil
engineer, a Mr. Mengis, called by plaintiff, that Twen-
tieth street at the point of the accident is a sixty-foot
street, with twelve-foot sidewalks, making the roadway
thirty-six feet wide. Washington avenue is an eighty-
foot street, with fifteen-foot sidewalks, leaving a fifty-
foot roadway. The distance between the two rails
of each track of the railroad is between three and a
half and four feet. The distance between the south
rail of the north track and the north rail of the south
track is about five feet. The westbound cars on the
Washington avenue line of the defendant railway run
on the north track, so that it appears that from the
building line to the north rail of the north or west-
bound track, the distance is thirty-four feet.

The Wrought Iron Range Company occupies the
block between Nineteenth and Twentieth streets on

the north side of Washington avenue and the structure comes out to the building line. A person after clearing the building can see east along Washington avenue, to Eighteenth and west several blocks. Plaintiff repeats several times that he was traveling at "a regular short trot," "about seven or eight miles an hour." He saw the car just as it was crossing Nineteenth street and coming west and toward him. When right close to the track he noticed that the car was coming fast, "faster as I expected the car was coming." When he first saw the car he let the horse go as it had been going before, at a regular slow trot; thought he had plenty of time and did not pay much attention to the car because when he first saw it, it was so far away. When he came near the track he looked up and saw that the car was coming so fast and so near him that he tried to check up the horse; first tried to pull back and then hurried the horse up to get over; "that is the last I know of it," said plaintiff.

Accepting plaintiff's own account of the accident, it is very clear that his horse was going at a sharp trot, for seven or eight miles an hour is a sharp trot, when we consider that a horse in walking covers about four miles an hour. That, as we are informed, is the regulation gait of seasoned calvary horses in the service of the United States Army. So plaintiff was driving toward a known danger, a street railroad track, especially dangerous to his observation at the time, for he saw a car coming down grade and only a block away; driving at a trot; going at almost double the speed of a horse when walking—going at a rate which made it impossible for him to stop, and without any attempt to check up, or look east again until he was at or on the track. As it appears to us, when he then tried to check up, in the immediate face of danger, for he was then on the track, he did the very thing that resulted disastrously, but he had invited the disaster by reckless driving to that point. Evidently in a panic,

he tried to check up or turn his horse when too late. Beyond doubt the car was going at an unlawful rate of speed. Even at that, plaintiff would not have been injured but for his own failure to look a second time, when he had a clear space of thirty-four feet over which to travel from the building line to the track, over which he continued toward the track, itself a sign of danger, with a car moving along it, as he knew, at so sharp a trot that he could not stop his horse.

"A violation of a municipal ordinance or of a statute is ordinarily negligence on the part of the railroad company, but the violation of an ordinance or a statute does not relieve the traveler from the duty which the law imposes upon him." [3 Elliott on Railroads (2 Ed.), p. 349, sec. 1165.]

We are unable to escape from the conviction in this case that, according to his own testimony, this plaintiff took the chance of crossing the tracks before the car could reach him. This is not the case of one traveling at a walk but of one driving a horse at a trot. One cannot stop a horse going at a trot as quickly as he can check one walking. The driver must not approach a dangerous spot recklessly or heedlessly. [3 Elliott on Railroads (2 Ed.), secs. 1164 to 1166.]

With all sympathy for the suffering and loss of plaintiff, we are compelled to hold, as a matter of law, on the authority of the decisions of our Supreme Court in Kelsay v. Missouri Pac. Ry. Co., 129 Mo. 362, l. c. 372, 30 S. W. 339, and Mockowik v. Kansas City, St. J. & C. B. R. R. Co., 196 Mo. 550, 94 S. W. 256, and of the Courts of Appeals in Schaub v. Kansas City Southern Ry. Co., 133 Mo. App. 444, 113 S. W. 1163; Dey v. United Railways Co., 140 Mo. App. 461, l. c. 473, 120 S. W. 134, and Paul v. United Railways Co., 152 Mo. App. 577, 134 S. W. 3, that plaintiff cannot recover. This, in brief, for these reasons: First, he drove his horse into a place of danger and at such a rate of speed as prevented him from averting the accident after he

saw, or, by the exercise of proper care, could have seen, that an accident was imminent; second, because he knowingly assumed the risk of getting across the track in safety. Under these facts he cannot recover. Unlike the facts in Krehmeyer v. St. Louis Transit Co., 220 Mo. 639, 120 S. W. 78, the evidence on which we hold plaintiff, as a matter of law, guilty of contributory negligence, is not contradictory. But one inference can be drawn from it, and that is the contributory negligence of plaintiff.

It is said that the motorman saw the danger of plaintiff and was bound to slacken up, invoking the humanitarian rule. The answer is, that plaintiff's own negligence caused him to enter into the danger zone too late for the motorman to have saved him by taking measures necessary to that end. [Ellis v. Metropolitan St. Ry. Co., 234 Mo. 657, l. c. 672, 138 S. W. 23; Taylor v. Metropolitan St. Ry. Co., 256 Mo. 191, 165 S. W. 327, l. c. 333.]

The judgment of the circuit court should be reversed. *Nortoni, J.,* concurs. *Allen, J.,* dissents in a separate opinion, and as he deems the decision herein to be contrary to the previous decisions of the Supreme Court in Strauchon v. Metropolitan St. Ry. Co., 232 Mo. 587, 135 S. W. 14; Ellis v. Metropolitan St. Ry. Co., 234 Mo. 657, 138 S. W. 23; and Waddell v. Metropolitan St. Ry. Co., 213 Mo. 8, 112 S. W. 59, as well as to other decisions of that court, he asks that the case be certified to the Supreme Court, which is accordingly done.

## DISSENTING OPINION.

ALLEN, J.—I am unable to concur in the majority opinion herein, and will undertake to state, as briefly as possible, the reasons for my dissent.

I. I am of the opinion that the ruling of the trial court on the demurrer to the evidence was proper.

It is conceded that defendant's negligence appears. Indeed, plaintiff's evidence goes to show that defendant's car approached the crossing in question at a very high and negligent rate of speed—estimated by the witnesses at from twenty-five to forty miles per hour—coming down hill with full power turned on; that the motorman in charge thereof was not keeping a vigilant watch, and did not see plaintiff or his horse and buggy until at the moment of the collision, and that no effort was made to stop the car until just as it struck the vehicle in which plaintiff was riding.

My associates, however, hold that plaintiff was guilty of contributory negligence, as a matter of law, precluding his recovery. This is said to be so partly for the reason that plaintiff was driving his horse in a trot as he approached the car track. But I am of the opinion that the facts of the case are not such as to render plaintiff guilty of negligence as a matter of law, merely because of the speed at which he drove toward and upon the tracks.

The evidence discloses that plaintiff was driving in a slow trot, south along Twentieth street, approaching the car tracks on Washington avenue. The building line along the north side of Washington avenue is about thirty-four feet from the nearer or westbound track. On the northwest corner of Twentieth street and Washington avenue stood a large building, extending up to the building line; and when plaintiff passed the corner of this building he was driving in a slow trot. When pressed, on cross-examination, to say at what rate of speed he was driving he said: "I couldn't say that in particular, how many miles—about seven or eight miles." But not only does he state that he was proceeding in "a kind of short trot—slow trot," but the witness who was on the front platform of the car likewise testified that plaintiff's horse was traveling in a slow trot. And when the witness was asked: "Was the buggy going faster than you walk? He said:

"No, sir." Q. "Just about the same speed?" A. "Yes, sir." Q. "And the horse was at a trot?" A. "I said a slow trot."

There is no evidence in the case whatsoever that plaintiff was driving so rapidly that, from the time that he emerged from behind the building and saw the car approaching from the east, a block distant, he could not have stopped his horse in time to prevent driving upon the tracks. Neither is there anything whatsoever to justify any such inference. On the contrary, it may be readily inferred that the plaintiff could easily have stopped his horse, going in a slow trot, within a much shorter space than that which then intervened between his horse's head and the tracks. It would appear to be altogether unreasonable to suppose that a horse, going at a slow trot, drawing a light "runabout," could not readily be stopped within a few feet. And certain it is that there is no evidence whatsoever even remotely suggesting that the horse and vehicle could not have been stopped after plaintiff passed the building line and saw the approaching car. On the contrary it affirmatively appears that plaintiff purposely allowed his horse to proceed forward for the reason that he apprehended no danger from the approaching car, because of its great distance from the crossing.

In this respect the case is altogether unlike that of Dey v. Railroad, 140 Mo. App. 461, 120 S. W. 134, relied upon in the majority opinion; for there it appears that the plaintiff was driving a team, attached to a heavy carriage, at such a rate of speed that after passing the building line he was unable to stop, by reason of which he came upon the car track in front of an approaching car. The latter was but one hundred feet distant when the plaintiff passed the building line, and approaching very rapidly. It appears that though the horses were then fifteen or twenty feet from the track, the plaintiff admitted that their

speed was such that he could neither stop nor turn aside in time to avert the accident.

The other cases cited in support of the proposition that "the driver must not approach a dangerous crossing recklessly or heedlessly," to-wit: Kelsay v. Railway, 129 Mo. 362, 30 S. W. 339; Mockowik v. Railroad, 196 Mo. 550, 94 S. W. 256; Schaub v. Railway Co., 133 Mo. App. 440, 113 S. W. 1163; and Paul v. Railways Co., 152 Mo. App. 577, 134 S. W. 3, have naught to do with the question of one's driving toward a railway crossing at a reckless rate of speed, so that he is unable to control his vehicle and thereby comes upon the track and is injured.

This phase of the majority opinion must find support, if at all, in following the testimony of the plaintiff, viz.: Q. "When you realized the danger, why couldn't you stop?" A. "When I realized the danger I started to stop, but I seen the car was going so fast that I couldn't stop the horse any more to go back, and I just tried the horse to force him across the track there." Q. "What did you do, Mr. Hamm, towards getting the horse off the track, if anything?" A. "I first tried to pull the horse back, and I couldn't pull the horse back. The horse was going in a kind of a trot, and I couldn't pull it back quick enough, and I seen as I could not stop the horse to go back—to turn around—so I tried to force the horse over, but (by) this time the car hit me."

But this testimony related to a time when the horse, according to plaintiff's testimony, was actually on the track. Plaintiff said: "When I came near to the track I just looked up and I seen the car coming so fast near me, so I tried to pull back, and then I hurried the horse up to get over." But later, on cross-examination, he explains that though *he* was near the track, as he sat in the buggy, "the horse was right on the track—was stepping on the track." He further testified that his inability to stop the horse and force

him off of the track was not due to the speed of the horse, which he repeatedly says was going slowly, but to the fact that the car was then so nearly upon him, and coming at such a high rate of speed, that there would not have been sufficient time to stop the horse and back off of the track, even had the horse been going at a walk. And he says that when he saw that the car was so close upon him, coming so rapidly, he became somewhat excited; that he did practically stop his horse at first, and then concluded that the safer plan was to urge him forward.

I think that it cannot be said that the evidence shows plaintiff to have been guilty of negligence as a matter of law, in that he recklessly drove toward the track and upon it at such a rate of speed that he was unable to stop his horse and vehicle, and avoid being struck by the car. The above testimony respecting his inability to stop his horse relates only to his failure to stop quickly enough, after the horse was upon the track, in order to escape by backing his horse and buggy, or by turning the latter off of the track. Such might well have been the case had plaintiff's horse been proceeding in a walk instead of a slow trot, for it appears that he then had but the briefest interval of time in which to act; the car, according to his testimony, being then but fifty feet away, and approaching at a speed which he estimated at thirty-five or forty miles per hour, other witnesses placing it at from twenty-five to thirty miles per hour.

It would be quite a different question were the evidence such as to make it appear that plaintiff approached the track at such a rate of speed as not to be able to control his horse, and to preclude the possibility of his stopping after he reached and passed the building line, and for the first time could see up the track toward the approaching car. Such were the facts of the Dey case, supra. But there is no such

evidence here. Nor does it appear that plaintiff could be said to be guilty of negligence as a matter of law in permitting his horse to continue to proceed in a slow trot after passing the building line, and seeing the car some four hundred feet away. As to this he said: "After I saw the car first, I left the horse go like I was going, a regular slow trot; I thought I had plenty of time; I didn't pay much attention to that car, because the car was so far away." Elsewhere in his testimony he says that he had been accustomed to drive over this crossing, generally three or four times a day, for some ten years; and that he was familiar with the usual speed of the cars at this place, and that the car in question was coming faster than he supposed, and faster than he had ever known one of these cars to travel. This he could not discern, however, when the car was a block away. And it appears that he relied upon the presumption that the car was proceeding at the usual rate of speed, which must be assumed to have been within the ordinance rate, to-wit, ten miles per hour, for the presumption is that defendant was accustomed to obey the law, and not that it habitually violated it. He therefore did not check his horse, but continued to drive him at a slow trot, believing that he had ample time to cross, and apprehending no danger. There was no car coming from the west, and the car which he observed coming from the east was so far away that he had no reason to anticipate danger therefrom. I think that his act cannot be pronounced negligent as a matter of law. Under the circumstances, manifestly, it would have been safer for him to have driven more rapidly than he did, after passing the building line, and seeing that the tracks were clear except for a car approaching from the east some four hundred feet away. Had he done so he would doubtless have escaped injury. As to his ability to stop, it seems that he did, in fact, bring his horse practically to a stop; but for which act it

may be that he would have escaped. However, he then had but an instant in which to act, and he is not to be held negligent for an error of judgment in the face of impending danger; and it is quite clear that he should not be denied a recovery on this score. [See Hanna v. Kansas City Southern Ry. Co., 178 Mo. App. 281, 165 S. W. l. c. 1152, and cases cited.]

This phase of the majority opinion proceeds upon the theory that plaintiff was driving in a "sharp trot," for, as is said, "seven or eight miles an hour is a sharp trot." But plaintiff disclaimed ability to estimate with any precision the number of miles per hour that a horse would travel in a slow trot. He repeatedly states that the horse was going slowly; and the witness upon the front platform of the car declares that the horse was not going more rapidly than a man could walk.

The testimony must be viewed in the light most favorable to plaintiff for the purposes of the demurrer; and so viewing it, I think that the case should not proceed upon the theory that the horse was going in a sharp trot. And in any event the judgment should not be reversed on this theory, in the absence of any evidence that plaintiff could not have stopped his horse after seeing the car, in time to avert the collision; and when in fact the evidence tends to indicate the contrary, and that he purposely continued to approach the track, apprehending no danger from the car.

II. But it is said that plaintiff was also guilty of negligence, as a matter of law in failing to exercise due care and caution in looking for the approach of the car, in that he looked only when he passed the building line, and failed thereafter to further look toward the approaching car until the latter was so near that the collision was unavoidable.

But in my opinion he cannot be declared guilty of negligence, as a matter of law, in failing to look a sec-

ond time before going upon the track, under the circumstances appearing in evidence. When he looked the first time he was slightly less than thirty-four feet from the track, his horse nearer by perhaps ten feet. He says that he saw the car at Nineteenth street. It appears that the distance from Twentieth street to Nineteenth street is three hundred and seventy-seven feet, and as plaintiff was about in the center of Twentieth street, the car, when he first saw it, must have been approximately four hundred feet from the point of collision. Plaintiff continued to approach the track, turning to look in the other direction for an approaching car. As to the car from the east which struck and injured him, he assumed that, by reason of its distance from him, no danger need be feared from it, acting upon the presumption that it was approaching at the usual or lawful rate of speed. It was at night, and at that distance he was unable to see and know that it was proceeding at a very high and dangerous speed.

In view of these facts, and particularly in view of the fact that he was driving and hence could, if necessary, pass over the tracks more quickly than if walking, it seems that he could not well be said to have been negligent, as a matter of law, in failing to further watch the approaching car, having to otherwise give heed to his surroundings in driving upon the crossing.

This question, I think, is disposed of by the opinion of the Supreme Court in Strauchon v. Railway Co., 232 Mo. 587, 135 S. W. 14. There the plaintiff, a pedestrian, looked the last time when the car was two hundred feet away, and through no fault of his he failed to discern the fact that the car was running at an unlawful rate of speed. He had fifteen or eighteen feet further to go in order to clear the track, and "thought that he had ample time to cross and would have had if the car had been running at its usual speed." It was held that he was not guilty of con-

tributory negligence, as a matter of law, but that the question of his negligence was one to be referred to the jury. And in the course of the opinion by WOODSON, J., the following was quoted approvingly from White's Supp. to Thompson on Neg., p. 318, sec. 1669, viz.:

"It is not required that a traveler should anticipate that an approaching train will proceed at an unlawful or unusual rate of speed, and he will not be charged with negligence, as a matter of law, in attempting to cross, if, in view of the distance at which the track seems to be clear, he would have time to cross before a train going at the usual and lawful speed would reach the crossing."

This appears to be equally applicable to the case in hand. Plaintiff, after passing the building line, and seeing the car, without being able to discern the fact that it was proceeding at a high and unlawful rate of speed, saw the track to the east to be clear for such a distance as undoubtedly would have enabled him to cross in perfect safety had the car been proceeding at the usual or lawful rate of speed. Under such circumstances plaintiff, knowing nothing to the contrary, and not being able to discern anything to the contrary by the exercise of ordinary care, had the right to presume that the car was proceeding at the usual and lawful rate of speed. [Strauchon v. Ry. Co., supra.] And his testimony tends to show that he relied upon the presumption that the car was so proceeding. For this reason, what is said in the Mockowik case, supra, as to presumptions of this character, is here inapplicable.

Since it appears that plaintiff looked when he passed the building line, and saw no car except this one, some four hundred feet away, I am of the opinion that he cannot be declared negligent as a matter of law in failing to look again, in view of the fact that he had every reason to conclude that, by continuing to drive forward, he would clear the tracks long before a car approaching at the usual and lawful rate of speed

would reach that point; and whether or not he was negligent in failing to look a second time before actually going upon the track, was a matter for the consideration of the jury. [See, also, Schafstette v. Ry. Co., 175 Mo. 142, 74 S. W. 826; Maloney v. Rys. Co., 183 Mo. App. 292; Peterson v. Transit Co., 114 Mo. App. 374, 89 S. W. 1042; Linder v. Transit Co., 103 Mo. App. 574, 77 S. W. 997; Moritz v. Transit Co., 102 Mo. App. 657, 77 S. W. 477.]

In the last-mentioned case it is said: "A driver or pedestrian can hardly find a better chance to cross car tracks in safety than when the nearest car is five hundred feet from it. On some streets of St. Louis there is nearly always a car that close some hours of the day."

And it may be here said that if a driver of a vehicle is to be held guilty of negligence as a matter of law in attempting to cross a car track with a car not nearer than about four hundred feet, it may be difficult indeed for him to find an opportunity to cross a double street car track upon which many cars are being operated in both directions, without being chargeable with negligence in so doing. To so hold would, it seems to me, be tantamount to saying that street car companies have a paramount right to the use of the streets, and may operate their cars in utter disregard and defiance of the ordinances regulating the speed thereof, and that a citizen attempting to pass over such tracks must do so at his peril. [See Lueders v. Railroad, 253 Mo. l. c. 110.]

III. But regardless of the foregoing, I think that the humanitarian rule, or last chance doctrine, is applicable to the case made by plaintiff's evidence, and that the demurrer to the evidence was properly overruled on this ground. The witness on the front platform of the car testified that the car stopped at Eighteenth street, two blocks from the point of the collision,

to take on and discharge passengers; then the motorman turned on full power and the car proceeded, down a considerable grade, at a rate of speed which the witness estimated to be from twenty-eight to thirty miles per hour, the speed not being checked at all until the instant of the collision, and no bell rung. This witness testified that when the car passed Eighteenth street the motorman was talking to an intoxicated man seated on the sand box on the front platform, as he had been doing ''all the way out.'' The witness could not say positively whether or not the motorman was so engaged after passing Nineteenth street. However, the witness says that when the car was about one-fourth of the distance from Nineteenth street to the point of collision, which would be approximately three hundred feet away, he plainly saw plaintiff's horse and buggy approaching the track. There were lights about the point of crossing, and from the evidence it appears that plaintiff's horse and buggy could be readily seen at such distance. It appears that the witness took his eyes off of the horse and buggy, and looked at the motorman and also at the intoxicated man on the sand box, and that when he looked forward again they ''were right on top of'' plaintiff.

His testimony on cross-examination is not altogether clear as to the movements of the horse and buggy and of the car; but he asserts positively that he saw the horse and buggy proceeding toward and quite near the tracks, at a time when the car had traversed but about one-fourth the distance from Nineteenth street to Twentieth street. And he estimates that the car was some sixty or eighty feet from the point of collision when the front wheels of the buggy had passed over the north rail of the westbound track. His testimony also shows that the motorman was not keeping a vigilant watch ahead, or in fact any watch at all, for the latter did not see plaintiff's horse and buggy until the collision occurred.

What the witness saw, from the front platform of the car, the motorman could also have seen. The vehicle had no top, and had the motorman been keeping a vigilant watch ahead, he would have seen that plaintiff was continuing to approach the track, and apparently oblivious to his danger, for he was looking the other way or straight ahead. Under such circumstances it was the duty of the motorman to have discovered plaintiff's peril, which he could have done by the exercise of ordinary care, and to thereafter have avoided striking and injuring him, if such could have then been done by the exercise of ordinary care, with the appliances at hand.

It is the duty of the motorman in charge of a street car to keep a vigilant watch for travelers about to cross the track, and he is held to have seen what he could have seen, had he been in the exercise of due care. [Ellis v. Metropolitan Street Railway Co., 234 Mo. 657, 138 S. W. 23.]

An expert witness for plaintiff, who had formerly been a motorman on this line of defendant's street railway, testified that a car, of the character in question, going at the rate of thirty miles an hour down this grade, under the conditions prevailing, could have been stopped within about one hundred feet. There is also testimony in the record to the effect that, though the motorman made no effort to stop the car until striking plaintiff's buggy, the car was thereafter stopped just west of the fire department building which stood upon the southwest corner of Washington avenue and Twentieth street. The length of the latter building, fronting on Washington avenue, was shown to be eighty feet. From which it appears that the car was actually stopped within approximately one hundred feet. The estimates of the rate of speed of the car vary from twenty-five to forty miles per hour, plaintiff's own estimate being the only one above thirty miles.

The testimony of the expert witness does not indicate within what distance the car could have been stopped if its speed exceeded thirty miles per hour. However, the testimony going to show that the car was actually stopped within approximately one hundred feet, after the motorman undertook so to do, is sufficient on this score. [See Ellis v. Metropolitan Street Railway Co., supra; Peterie v. Metropolitan Street Railway Co., 177 Mo. App. 359, 164 S. W. 254.]

It therefore appears that from the time that the witness on the front platform saw plaintiff's horse and buggy approaching the tracks, and within a few feet thereof, the motorman could readily have stopped the car before reaching the crossing. But, aside from this, it is quite apparent that a mere slackening of the speed of the car, coupled with a sounding of the gong, would have avoided the collision, since, as it was, the buggy was nearly across the track before it was struck by the car, the latter striking the rear wheels only. At least a jury would be justified in so finding. In such cases the humanitarian rule may be invoked. [See Peterie v. St. Ry. Co., supra; Maginnis v. Railroad, 182 Mo. App. 694, 165 S. W. 849, and cases cited.]

In any event, there was substantial evidence to justify a finding that the motorman, by the exercise of ordinary care, could have seen that plaintiff was in a position of peril, or that he was in the very act of placing himself in a perilous position, in ample time to have avoided injuring him, by using ordinary care to the end of stopping the car or checking the speed thereof.

I think that plaintiff was entitled to go to the jury under the humanitarian or last chance doctrine, even though he be regarded as negligent in coming upon the tracks; and that the demurrer was properly overruled on this ground. [See Ellis v. Street Ry. Co., supra; Waddell v. Street R. Co., 213 Mo. 8, 112 S. W. 59; Pe-

terie v. Street Ry. Co., supra; Hall v. Railroad, 124 Mo. App. 661, 101 S. W. 1137.]

A demurrer to the evidence can be sustained only when the cause of action pleaded is unsustained by any material evidence or by any inference reasonably to be drawn from the facts proven.     [See Enloe v. Car & Foundry Co., 240 Mo. 448, 144 S. W. 852, and cases cited.]

I am of the opinion that plaintiff's evidence made a prima-facie case.  The defendant, however, stood mute and offered no testimony.  I think therefore that the judgment should be affirmed, since no error is assigned other than the ruling on the demurrer.  And as I deem the decision herein to be contrary to the previous decisions of the Supreme Court in Strauchon v. Railway Co., 232 Mo. 587, 135 S. W. 14; Ellis v. Metropolitan Street Railway Co., 234 Mo. 657, 138 S. W. 23; and Waddell v. Street R. Co., 213 Mo. 8, 112 S. W. 59, as well as to other decisions of that court, I ask that the case be certified to the Supreme Court for final determination.